## COMMONWEALTH *vs.* JOHN C. BEST.

Essex. January 6, 1902. — February 27, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Practice, Criminal,* Summoning jury. *Evidence,* Of identity, Best and secondary,
Things in evidence, Experts. *Murder.*

Pub. Sts. c. 170, § 11, directing, that the clerks of courts in issuing the venires for
jurors shall require from each town and city a number of jurors as nearly as may
be in proportion to their respective number of inhabitants, does not require the
proportion to be observed on every particular occasion when a jury is to be
summoned, but is a general direction to the clerks that taking one term of court
with another jurors shall be apportioned with reference to the population of the
towns and cities, so that the duty of serving on juries shall be equalized as far
as possible.

In a murder trial a witness may identify a wagon by sound only, testifying, that
he heard the defendant's wagon go by at a certain hour of the night recognizing
it as having a rattle known to him and by a peculiar sound made by the horse's
hoofs.

The only deputy sheriff of a county in another State may testify that he knew
nothing of a certain warrant and offer of reward, the non-existence of which is
material to show the falsity of a statement of the defendant in a murder trial.
*And semble,* that one having personal knowledge of the state of a record from
inspection can testify that it did not contain a certain warrant without pro-
ducing the record.

In order to show that a murdered man was shot with a certain rifle belonging to
the defendant, a bullet may be put in evidence which has been pushed through
the barrel of that rifle and is marked in the same way as two bullets which
were found in the body of the murdered man.

Photographs of bullets so arranged as to bring out the likeness in the marking of
the different bullets may be used at a murder trial in which all of the bullets
are in evidence. If there were other aspects more favorable for the defence, this
could be pointed out to the jury on the original bullets.

An expert may testify, that the bullets found in the body of a murdered man were
marked by rust in the same way that they would have been if fired through
the rifle of the defendant, and that it took several months for the rust that he
saw in that rifle to form.

The evidence stated in the opinion of the court was held to be sufficient to war-
rant the jury in finding a verdict of murder in the first degree.

INDICTMENT for the murder of one George E. Bailey, re-
turned January 25, 1901.

At the trial in the Superior Court, before *Sherman* and *Fox,*
JJ., the jury returned a verdict of guilty of murder in the first

degree; and the defendant alleged exceptions, which are stated by the court.

*J. H. Sisk & N. D. A. Clarke*, for the defendant.

*H. M. Knowlton*, Attorney General, *& W. S. Peters*, District Attorney, for the Commonwealth.

HOLMES, C. J.    This is an indictment for murder upon which the defendant has been found guilty of murder in the first degree.    The case is here on exceptions.    The first exception is to the overruling of a motion to quash the panel because the clerk in issuing the venires did not " require from each town and city a number of jurors as nearly as may be in proportion to their respective number of inhabitants," as required by Pub. Sts. c. 170, § 11.    *Commonwealth* v. *Walsh*, 124 Mass. 32, 37.    The object of this enactment is not to benefit the prisoner, but is expressly stated to be to " equalize as far as possible the duty of serving as jurors."    The exception might, perhaps, be disposed of on the ground that the section gives the prisoner no rights, or, when no prejudice is shown, is merely directory as to him.    See *Friery* v. *People*, 2 Keyes, 424, 452, 453; *Forsythe* v. *Ohio*, 6 Ohio, 19, 21; *Evans* v. *State*, 109 Ala. 11.    But it is unnecessary to consider that answer, because, as was decided in a trial for murder in this court, when there is no ground for suspecting misconduct or partiality, the true construction of the statute is not " such as to require that proportion to be observed in every particular occasion when a jury is to be summoned.    That, indeed, is practically impossible.    The statute relates equally to civil cases and to criminal cases.    In many counties of this Commonwealth the number of towns is much in excess of the number of jurors that are ordinarily required, and it would be impossible to observe it in each particular case with accuracy and with literality.    But the intention of the statute, as it seems to us, is to give general directions to the clerks in issuing the venires for jurors, that they shall be so apportioned, taking one term of the court with another, with reference to the population of the towns, that the duty of serving on juries shall be equalized as far as possible."    Allen, J., Trial of Henry K. Goodwin, 6, 7. This construction of the statute cuts the root of the defendant's argument.    See, further, *State* v. *Moore*, 69 N. H. 102.

Bailey, the person alleged to have been murdered, was last

seen alive at about a quarter past nine in the evening of October 8, 1900. Two witnesses testified without objection that between nine and ten they heard his milk wagon pass the house in the direction of Breakheart Hill farm, where he was living alone with the defendant. Nine days later his body was found, cut up, in a pond in Lynn, about six miles from his farm. The government contended that Bailey was killed shortly after his supposed return home and was at once cut up and carried to the pond, and it was not disputed that the movements of Bailey's wagon after his return home were material. These two witnesses testified to having heard a vehicle go by their house, in the direction from the farm, between ten and eleven. They both had described Bailey's wagon as having a rattle known to them, and one of them also mentioned a peculiar sound made by the horse's hoofs. Subject to exception they were allowed to state that it was the same team that had passed before, — Mr. Bailey's team. The objection is only to allowing an identification by the witnesses through hearing alone, instead of leaving that question to the jury, confining the witnesses to stating the similarity of the sounds to those that had been heard before from the wagon going to the farm. (The road was not travelled beyond the farm, so that it might be assumed that any vehicle coming from that direction came from the farm.) It seems not to need argument to show that this evidence was admissible. *Commonwealth* v. *Hayes*, 138 Mass. 185. *State* v. *Rainsbarger*, 74 Iowa, 196, 203, 204. So as to an exception, not argued, to allowing a witness to testify that two shots heard between half past nine and ten came from the south or southwest, the direction of Breakheart Hill farm as stated by him. *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 133.

An exception was taken to testimony of the defendant's brother-in-law as to some incriminating conversation of the defendant. It now is argued that the communication was privileged because made to an agent of the defendant's lawyer. As to this it is enough to say, without considering other questions, that it does not appear that the witness was acting as an agent, or that the communication was made to him in the belief that he was an agent, or in confidence other than reliance upon the witness's personal friendship.

It was shown that the defendant had accounted for Bailey's absence by the suggestion that there was a reward out for Bailey's arrest because of his having left his wife and children at Wiscasset, Lincoln County, Maine, and having come to Massachusetts with another woman, and that the officers were after him. A witness was produced who testified that he was the only deputy sheriff of Lincoln County, and that there was no warrant out for Bailey's arrest or reward offered by the town of Wiscasset. This was excepted to, and thereupon the question was modified by inserting the words " to your knowledge." It is enough to say that the evidence was admissible to show that the officer who naturally would have been after Bailey if the defendant's suggestion had been true knew nothing of any warrant or reward. But even if we were dealing with matters within the jurisdiction, (see *Commonwealth* v. *Corkery*, 175 Mass. 460, 462,) it would be going pretty far to hold that a person having personal knowledge of the state of a record from inspection could not testify that it did not contain a certain warrant, without producing the record.

The government contended that Bailey was shot with a Winchester rifle that was in the kitchen. Two bullets were found in his body, and the government was allowed to prove that another bullet of the same calibre had been pushed through the rifle on or shortly after October 24. It then was allowed to put this bullet in evidence, and also photographs from this and the two bullets from the body, in order to show that the marks from the rifle in the two cases coincided so closely as to prove that all three bullets had passed through the same rifle barrel. This evidence was excepted to. The main ground seems to be that the conditions of the experiment did not correspond accurately with those of the date of the shooting, that the forces impelling the different bullets were different in kind, that the rifle barrel might be supposed to have rusted more in the little more than a fortnight that had intervened, and that it was fired three times on October 10, which would have increased the leading of the barrel. We see no other way in which the jury could have learned so intelligently how that gun barrel would have marked a lead bullet fired through it, a question of much importance to the case. Not only was it the best evidence

attainable but the sources of error suggested were trifling. The photographs avowedly were arranged to bring out the likeness in the marking of the different bullets and were objected to on this further ground. But the jury could correct them by inspection of the originals, if there were other aspects more favorable to the defence.

With reference to the bullets found in the body an expert was allowed to testify that they were marked by rust in the same way that they would have been if they had been fired through the rifle found at the farm, and that it took at least several months for the rust that he saw in the rifle to form. It is objected that these were not matters for expert testimony. We see no reason to doubt that the testimony was properly admitted.

After giving the weight of the bullets found in the body, a witness was allowed to give the weight of bullets given up by the defendant at the farm. This obviously was a link in the chain of proof, and needs no special remark.

The last exception argued is to the refusal of the court to rule that there was no evidence warranting a verdict of guilty of murder in the first degree. It is argued somewhat as if the question were whether there was any evidence of murder at all. A sufficient answer is a very brief summary. There was evidence, as we have stated, — with the weight of it we have nothing to do, — that Bailey went home to the farm after he last was seen alive. Some one shot him, probably between nine and ten that night, and probably with the rifle at the farm. The defendant was there alone. Bailey's body was cut up, therefore he probably was killed by some one who had opportunity for deliberate action. There was some evidence of ill feeling towards Bailey on the defendant's part, as well as of a possible motive in the way of money. The defendant told the whereabouts of a watch which Bailey always wore when alive, and seemingly had concealed it with some money where it was found. He also gave false reasons for Bailey's disappearance. There was some evidence that Bailey's wagon was driven from the farm, as we have stated, between ten and eleven, to the pond in Lynn. The jury were fully warranted in finding that the defendant killed Bailey. We cannot say that they were not warranted in finding that

the murder was in the first degree.   See *Commonwealth* v. *Umilian*, 177 Mass. 582.   If there was evidence warranting the finding, it must be left to the jury to say whether it produces or ought to produce a sufficiently strong conviction to justify their verdict.   Courts do not attempt to measure the intensity of evidence.   They stop with the decision that some evidence has been produced.

*Exceptions overruled.*