BLAIR'S FOODLAND INC. *vs.* SHUMAN'S FOODLAND, INC.

Suffolk. February 4, 1942. — February 26, 1942.

Present: FIELD, C.J., QUA, COX, & RONAN, JJ.

*Unlawful Interference. Trade Name. Evidence,* Competency, Public record. *Equity Pleading and Practice,* Decree.

The proprietor of a city store, using a name of uncommon usage which by advertising and the building up of a business reputation had acquired in the mind of the public who resided in the area from which he drew his patronage a secondary meaning indicating the store owned and conducted by him, was entitled to injunctive relief against the use of such name by the proprietor of a store of substantially the same character about a mile and a half distant; proof of actual deception of the public was not required.

The fact that public records of a municipal office did not contain a certificate, the absence of which was competent evidence, might be shown by testimony of an attorney at law that he had searched those records and had found no such certificate.

A mere registration of a trade name in accordance with G. L. (Ter. Ed.) c. 110, § 8, did not give the registrant a greater right to protection against unfair competition by use of the name than he had at common law.

In a suit in equity seeking to enjoin unlawful use by the defendant of a trade name on the ground that the name had acquired a secondary meaning in connection with the plaintiff's business, the plaintiff was entitled to an injunction merely precluding use of the name in connection with any store selling goods of the same nature as those sold by the plaintiff within an area, exclusion from which the trial judge should find necessary to protect the plaintiff's rights.

BILL IN EQUITY, filed in the Superior Court on July 15, 1941.

The suit was heard by *Swift,* J.

*G. A. Goldstein,* for the defendant.

*S. B. Stein,* (*L. Shulman* & *H. J. Stein* with him,) for the plaintiff.

RONAN, J. The plaintiff, a large retail dealer in groceries, meats, fish, bakery products and liquors, having a place of business on Washington Street, in the Roxbury district of Boston, brought this bill in equity to restrain the defend-

ant, a retail dealer in articles similar to those sold by the plaintiff and having an established place of business upon the same street, from conducting its business under any name of which the word "Foodland" is a part. The suit was heard by a judge who entered a final decree granting the requested relief. The defendant appealed. The case is here with a transcript of the evidence and a report of the material facts.

The judge found that one Burg, in 1926, conducted "a food provision emporium" in the Roxbury district of Boston under the name of "Blair's Foodland"; that in February, 1926, he became the registrant of the trade name "Foodland" in connection with said business, in accordance with the provisions of our statutes, and used this trade name on his stationery, bill heads and advertisements until 1929, when the plaintiff was incorporated and Burg transferred the business to it including the trade name "Foodland"; that the plaintiff has since continued to conduct the business at the same location under its own name; that the plaintiff deals in all kinds of foodstuffs, employing a large number of people and making gross sales of $1,000,000 a year; that the business is widely advertised and has become well known to the general public; that one Shuman, in 1934 or 1935, opened a store on Washington Street, which was about one and one half miles from the plaintiff's place of business, and at that time knew of the plaintiff's business and the name under which it was conducted; that Shuman was using the name "Foodland" in connection with his business in May, 1941, when he caused the incorporation of the defendant and conveyed his business to it; that the defendant has since maintained this business; and that Shuman was notified by the plaintiff shortly before he formed the corporation that he had no right to use the word "Foodland" in connection with his business. The judge further found that the signs on the plaintiff's store and upon the defendant's store were somewhat alike in the size and character of the letters; that the plaintiff had an exclusive right to use the name "Foodland" under the registration of it as a trade name; and that the word was

of uncommon usage and had come to mean the plaintiff's place of business to the public.

These findings of fact are assailed by the defendant, and it is the duty of this court to examine the evidence and decide the case according to its own judgment as to facts, giving due weight to the findings of the trial judge, which are not to be reversed unless plainly wrong. *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398. *Buckley* v. *Buckley,* 301 Mass. 530. *Vergnani* v. *Guidetti,* 308 Mass. 450.

The evidence discloses that the defendant does a much smaller business than the plaintiff; that Shuman selected the name "Foodland" because he liked it better than the terms market, food center, or food mart. He knew that the plaintiff was using the name but he did not know that the plaintiff had the exclusive right to use it. There was evidence that the plaintiff did not know that Shuman was using the word "Foodland" until 1941, at about the time quite a few customers and a representative of a mercantile agency inquired if the plaintiff had any connection with the defendant's store. The findings — other than the finding that the plaintiff had an exclusive right to the use of this word under the registration statute, which is hereafter referred to — when considered with the evidence, present a case where a term adopted and used by the plaintiff in conjunction with its business has acquired through the years, by advertising and building up a business reputation, a secondary meaning in the minds of the public who reside in the area from which the plaintiff draws its patronage, so as to indicate the store owned and conducted by the plaintiff. The reputation and good will acquired by a merchant in the conduct of his business are valuable property rights which will be protected from unfair methods of a business rival. The defendant undoubtedly has a right equal to that of the plaintiff to establish and maintain a store and to compete with the plaintiff, but it had no right to solicit and secure patronage to the plaintiff's harm by misleading the public into believing that in trading with the defendant it was dealing with the plaintiff. The public

was entitled to be free from such deception. The plaintiff was entitled to relief from such interference with its business. It is true that the record does not disclose any instance where actual deception was practised upon any customer of the plaintiff or that there was any mistake in the transmission of orders or delivery of mail to the defendant which were intended for the plaintiff. Proof of actual deception of the public is not required. It is enough if, as here, the similarity of names, of signs, of the nature of the businesses, as well as the locations of the stores are such that a reasonable probability exists that purchasers using ordinary care will be induced to trade with the defendant in the belief that its store is conducted by the plaintiff. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154. *Viano* v. *Baccigalupo*, 183 Mass. 160. *Regis* v. *H. A. Jaynes & Co.* 185 Mass. 458. *Reading Stove Works, Orr, Painter & Co.* v. *S. M. Howes Co.* 201 Mass. 437. *Forster Manuf. Co.* v. *Cutter-Tower Co.* 211 Mass. 219. The testimony of Shuman, the president, treasurer and principal stockholder of the defendant, tends strongly to support the conclusion that the defendant was wrongfully attempting to appropriate the plaintiff's trade name. The plaintiff is entitled to injunctive relief under our decisions, many of which are collected in *General Fruit Stores, Inc.* v. *Markarian*, 300 Mass. 90; *Schnare* v. *Evans*, 301 Mass. 343, 345; *Cardinal* v. *Taylor*, 302 Mass. 220; and in *Jackman* v. *Calvert-Distillers Corp. of Massachusetts*, 306 Mass. 423, 424.

Shuman testified that when he opened this store on Washington Street in 1934 or 1935, he changed the name of his chain of bakery stores from "Shuman Bakeries" to "Shuman's Foodland" and that some years ago he filed a certificate in the office of the city clerk of Boston, showing that he was doing business under that name. Subject to the defendant's exception an attorney testified that he examined the records at the office of the city clerk from 1931 to date and found no record of any certificate filed by Shuman except for a certificate filed on March 25, 1941, which related to a store conducted on Leverett Street, in

Boston, to the effect that he was conducting business at that store under the name of "Shuman's Foodland." The evidence was competent in reference to priority of use of the word in question, and it was also admissible to contradict Shuman. It was a practical way of showing the absence of a certificate. *Bristol County Savings Bank* v. *Keavy,* 128 Mass. 298. *Commonwealth* v. *Meserve,* 154 Mass. 64. *Dumangue* v. *Daniels,* 154 Mass. 483. *Commonwealth* v. *Best,* 180 Mass. 492, 495. Wigmore, Evidence, § 1244.

Upon the facts disclosed by the record the registration of the word "Foodland" in accordance with G. L. (Ter. Ed.) c. 110, § 8, did not confer upon the plaintiff any additional right to protection against unfair competition. As pointed out in *United Drug Co.* v. *Theodore Rectanus Co.* 248 U. S. 90, 99, concerning the trade mark which was involved in *Regis* v. *H. A. Jaynes & Co.* 185 Mass. 458, "nor is there ground for the contention, that registration of the Regis trademark under either the Massachusetts statute or the act of Congress, or both, had the effect of enlarging the rights of Mrs. Regis . . . beyond what they would be under common law principles." See also *Tracy* v. *Banker,* 170 Mass. 266, 271. *Grocers Supply Co.* v. *Dupuis,* 219 Mass. 576. *Simoneau* v. *Landry,* 242 Mass. 578. *Wallingford* v. *International Manuf. Co.* 244 Mass. 477. *Rost* v. *Salerno,* 271 Mass. 492. *Jackman* v. *Calvert-Distillers Corp. of Massachusetts,* 306 Mass. 423. *Prestonettes, Inc.* v. *Coty,* 264 U. S. 359, 368. *American Steel Foundries* v. *Robertson,* 269 U. S. 372, 380.

The bill alleged that the word "Foodland" had acquired a secondary meaning in connection with the sale of food throughout the "cities and towns of Greater Boston," but the final decree enjoined the defendant from operating any store under any name of which the word "Foodland" is a part. Equitable relief is limited by the scope of the bill. *Pickard* v. *Clancy,* 225 Mass. 89. *National Rockland Bank of Boston* v. *Johnston,* 299 Mass. 156. The final decree was too broad. *Gamwell* v. *Bigley,* 253 Mass. 378. *Knowlton* v. *Fourth-Atlantic National Bank of Boston,* 264 Mass. 181. *Morin* v. *Clark,* 296 Mass. 479. *Gilbert* v. *Repertory, Inc.*

302 Mass. 105. The defendant therefore should be enjoined only from using the word "Foodland" in connection with any store selling goods of the same nature as those sold by the plaintiff within such area as the trial judge finds is necessary to protect the plaintiff's right.

The final decree must be reversed with costs to the plaintiff and the case remanded to the Superior Court for further proceedings in accordance with this opinion. *C. A. Briggs Co.* v. *National Wafer Co.* 215 Mass. 100. *Kaufman* v. *Kaufman,* 223 Mass. 104. *Chandler, Gardner & Williams, Inc.* v. *Reynolds,* 250 Mass. 309. *Edgecomb* v. *Edmonston,* 257 Mass. 12. *Becker College of Business Administration & Secretarial Science* v. *Gross,* 281 Mass. 355. *Cardinal* v. *Taylor,* 302 Mass. 220.

*Ordered accordingly.*