COMMONWEALTH *vs.* JENNIE TORREALBA.

Middlesex. April 3, 1944. — April 26, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Larceny. Joint Enterprise. Practice, Criminal,* Reading of indictment. *Pleading, Criminal,* Indictment. *Evidence,* Relevancy and materiality, Business record, Absence of fact.

Permitting the reading to the jury at the opening of a criminal trial of an entire indictment as returned, including nine aliases of the defendant stated therein, disclosed no error although the evidence later introduced established only one of the aliases.

It is not a desirable practice to include in an indictment numerous aliases of the defendant where they are not a necessary element of the crime charged and are not required for the establishment of the identity of the defendant. Per WILKINS, J.

Evidence that two women, jointly indicted in several counts for stealing articles of the value of less than $100 at different stores, entered and left the stores together, that shortly thereafter, while they were still together, some of the articles were found in the possession of one of the women and some in the possession of the other, and that the articles had been stolen from the stores, warranted a finding that the women had engaged in a joint enterprise of shoplifting and warranted conviction of both defendants on all counts.

At the trial of an indictment for stealing from a store, where there was evidence that articles from the store without sales slips accompanying them were found in possession of the defendant shortly after he had been in the store, the manager of the store properly was permitted to testify that it was the custom at that store to give a sales slip with each purchase, and that he had examined the record of the cash register on the occasion of the alleged theft and that it did not show a sale of such articles.

INDICTMENT, found and returned on June 7, 1943.

The case was tried in the Superior Court before *Beaudreau*, J.

*S. H. Lewis*, (*H. L. Barrett* with him,) for the defendant.

*G. E. Thompson*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.    The defendant and one Mary Russo were indicted, tried together, and convicted on four counts charging them with stealing articles of the value of less than $100.

1. Each count alleged that the theft was committed by "Mary Russo and Jennie Torrealba, otherwise called Jean Parker, otherwise called Jennie Delfino, otherwise called Olive Parker, otherwise called Jean Bartholomew, otherwise called Jennie Andrews, otherwise called Jennie Murphy, otherwise called Olive Gerard, otherwise called Jennie Castalucci, otherwise called Jennie Andreosi." After the jury were empaneled and before the indictment was read, counsel for the defendant objected to the reading of the aliases. The judge directed the clerk to read the indictment as written, and the clerk did so subject to the defendant's exception. The defendant was referred to by witnesses both as Jean Parker and as Jennie Torrealba. There was testimony that the defendant, when asked her name by a police officer, replied, "Tagnelion," and then answered in the affirmative a further question as to whether she was also known as Jean Parker. Other than that, there was no evidence in proof of the aliases. The defendant offered no testimony, and rested at the close of the Commonwealth's case without asking any further ruling on this point. The defendant contends that this is not a mere matter of fictitious or erroneous names, which is not even ground for abatement (G. L. [Ter. Ed.] c. 277, § 19), but more fundamentally that she was preju-

diced by the reading of the aliases, which were in no way essential to the proof of the crime charged, and that their use unsupported by testimony might well account for her conviction. It is obvious that it is not a desirable practice to include in an indictment numerous aliases which are not an allegation of a necessary element of the crime charged or which are not required for the establishment of the identity of the defendant, even though, as here, the actual names are harmless in themselves. The exception was to the refusal of the judge to interfere with the reading of the whole indictment. In this there was no error. At that point in the trial it could not have been assumed that there would be no evidence in support of the aliases, nor was the judge obliged to ask the district attorney for assurance that there would be such evidence. In order to raise the question of the absence of proof, the defendant should have directed the judge's attention to the matter by appropriate requests for instructions. Without intimating that the denial of such requests would have been error, we are unable to agree with the defendant's contention that her conviction might well have been brought about by the use of the aliases, only one of which was proved. The evidence of guilt was extremely strong. On the uncontradicted testimony the property alleged to have been stolen was recovered from the possession of the defendant and her companion, both of whom could have been found to have given a false account of their doings to the police. See *Commonwealth* v. *McDermott*, 255 Mass. 575, 582.

2. The defendant also excepted to the denial of motions for a directed verdict of "Not Guilty" on each count. These exceptions must be overruled. The first, second, third, and fourth counts respectively charged the theft on June 5, 1943, of two skirts and five blouses, the property of Gorin's Incorporated; five shirts and one table cloth, the property of W. T. Grant Company; two shirts, the property of Enterprise Stores Incorporated; and one lounging robe, the property of Everett Department Stores. The testimony for the Commonwealth tended to show the following: On June 5, 1943, about 2:45 P.M., Mary Russo and the defendant were

seen by two detectives to leave the defendant's house in Somerville and proceed in an automobile driven by the defendant to the vicinity of Everett Square, where the automobile was parked about 3 P.M. The two women walked toward Everett Square. The defendant carried a large, light colored cloth handbag and a pocketbook; and Mary Russo carried a small bag and a paper shopping bag. At 3:10 P.M. they entered the Enterprise store, where the defendant was observed by one detective purchasing a shirt for which she paid. Mary Russo was standing beside her. The defendant, carrying the package she had purchased, and her companion then left the store and walked to and entered the Everett department store. They were next observed in front of Gorin's department store. At that time the defendant was carrying the cloth shopping bag. The two women then went to Grant's store, which they entered at 3:20 P.M. They were seen in the store together. They remained about five minutes, and then came out and walked along the street. Upon seeing a police officer and one of the detectives they stopped and started to walk across the street. It was to the officer at this time that the defendant gave the name of "Tagnelion," and said that she was known as Jean Parker. The defendant was still carrying the cloth bag and a small black bag, and Mary Russo was carrying a small brown bag and a paper bag folded. The defendant was asked what she was carrying in the bag, and she said she was carrying it for her friend. The two women were then asked to go to the police station for inspection of their bags. On the way Mary Russo dropped five shirts bearing the label of Grant's store. At the station house the cloth bag carried by the defendant was found to contain five blouses and two skirts bearing the label of Gorin's store and a wallet containing $244. The defendant told the officer that the wallet was hers, and that she had put it in the bag on the way to the station. The officer did not see her open the bag at any time, although she walked at his side. He had taken this bag from her at the time Mary Russo dropped the shirts. In the paper bag carried by Mary Russo there were three shirts bearing the label of the Enterprise store, and a

sales slip for one shirt. In the defendant's presence Mary
Russo said that she herself bought them at the Enterprise
store, and must have lost the slip for the other two shirts.
In the pocketbook carried by Mary Russo was a lounging
robe. While in the station house Mary Russo was asked to
take her coat off, and as she stood up to do so, a table cloth
bearing the label of W. T. Grant Company fell to the floor.
The only sales slip for any of the articles carried by the de-
fendant or her companion was for one shirt from the Enter-
prise store. In the presence of the defendant the police
officer asked Mary Russo what she had been doing that
afternoon. She said that she had been in Boston, had taken
the train to Everett Station, whence she had walked to
Everett Square, where she had accidentally met the defend-
ant in front of Grant's store; that they had talked a couple
of minutes; that she had gone into Grant's store, leaving the
defendant outside, in an unsuccessful effort to buy some
wax; that she came out and rejoined the defendant, and
they were walking across the street when they met the police
officer. She was then asked, "Where did you get this stuff?"
She answered, "I stole it." She said she had taken the
lounging robe from the Everett department store and the
table cloth and the five shirts with Grant labels from Grant's
store; that she had bought the three shirts at the Enterprise
store; that she stole the merchandise from Gorin's store;
and that she had been in all these stores alone. The defend-
ant told the police officer that at about 2 P.M. she came to
Everett alone in her automobile for the purpose of seeing a
man named Doc Rock, walked around Everett Square, and
ran into Mary Russo in front of Grant's store; that she
waited outside while Mary Russo went in to make a pur-
chase; that they were walking along the street when the
police officer came along: and that she had not been in any
of the stores with Mary Russo during the afternoon. The
defendant told the manager of the Enterprise store that if
he did not prosecute she would promise that "they won't
come into" the store any more. There was also evidence
that the various articles were the property of the respective
stores as alleged in each of the four counts, and that except

for one shirt from the Enterprise store there were no records of sales of any of the articles in the cash registers of any of the stores.

The defendant contends that there is no evidence from which could be found an intent on her part to steal or carry away the merchandise. We are of opinion that the jury would have been warranted in finding that there was a joint enterprise of shoplifting entered upon by the defendant and Mary Russo. The jury could have found that the articles had not been sold, were all recently stolen, and were jointly in the possession of the two women. "It was not essential that the property stolen should have been in the sole possession of the defendant." *Commonwealth* v. *O'Hare*, 254 Mass. 564, 565. 1 Bishop, Criminal Law (9th ed.) § 656 (2). The jury could also have found that no satisfactory explanation of such possession was given by the defendant. This might convince them of her guilt. *Commonwealth* v. *Taylor*, 210 Mass. 443, 444. *Commonwealth* v. *Grace*, 265 Mass. 119, 124.

There is much more here than the mere presence of the defendant at or near the scene of the crime. *Brown* v. *Perkins*, 1 Allen, 89, is not in point. In the case at bar it cannot be justly said that the question of guilt is left to conjecture or surmise and has no solid foundation in established facts. See *Commonwealth* v. *O'Brien*, 305 Mass. 393, 401. The jury could have found the defendant to have been an active participant in the entire enterprise. The statement of Mary Russo that she had stolen all the "stuff" — assuming in the defendant's favor that it was not admissible against her — did not preclude the jury from finding that the defendant also stole it in coöperation with her. The crime of stealing property not exceeding $100 in value (see G. L. [Ter. Ed.] c. 266, § 30) is a misdemeanor. G. L. (Ter. Ed.) c. 274, § 1. *McDermott* v. *W. T. Grant Co.* 313 Mass. 736, 737. *Collins* v. *Commonwealth*, 315 Mass. 167, 168. "In misdemeanors there are no degrees, but all who participate in them are principals and may be charged as such and convicted upon proof of having taken any part therein." *Commonwealth* v. *Jaffas*, 284 Mass. 417, 419,

and cases cited.   The jury, furthermore, were not obliged to believe this statement of Mary Russo, particularly as it was accompanied by an assertion, which the jury could find was untrue, that she was the one who had made the shirt purchase in the Enterprise store.   The jury could have found properly that the defendant herself had made false statements as to material facts, and this could be considered as showing a consciousness of guilt.   *Commonwealth* v. *Barber*, 261 Mass. 281, 288.   *Commonwealth* v. *Leland*, 311 Mass. 447, 456.   The motions for directed verdicts were rightly denied.

3. Certain exceptions to the admission of evidence remain to be considered.   The manager of the Enterprise store was permitted to testify that it was the custom in his store to give a sales slip with each purchase.   In this there was no error.   *Mumford* v. *Coghlin*, 249 Mass. 184, 190.   *Santarpio* v. *New York Life Ins. Co.* 301 Mass. 207, 209.   *Meehan* v. *North Adams Savings Bank*, 302 Mass. 357, 363.   *Anderson* v. *Billerica*, 309 Mass. 516, 518.   Wigmore, Evidence (3d ed.) § 92.

The manager of each of the four stores testified that he had examined the record of the cash register on the afternoon in question, and that this did not show the sale of any article alleged in the indictment to have been the property of his store.   This was a proper method of proving the absence of any record of sale.   *Commonwealth* v. *Best*, 180 Mass. 492, 495.   *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172, 176.   Wigmore, Evidence (3d ed.) § 1244.   In these circumstances the proof of the fact that an entry does not exist does not require the production of the records themselves or the laying of a foundation for the introduction of secondary evidence.

*Exceptions overruled.*