HENRY J. RICHTER, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. July 10, 1968.

Certiorari Denied March 3, 1969.

Cordell H. Sloan, Bruce Kelly, Jr., Memphis, for plaintiff in error.

George F. McCanless, Atty. Gen. of Tenn., Paul E. Jennings, Asst. Atty. Gen., Nashville, Ewell C. Richardson, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

WALKER, Presiding Judge.

Henry J. Richter, the defendant below, is before the Court on an appeal from a conviction of receiving stolen property stolen beyond the limits of the State of Tennessee and sentenced to eleven months and twenty-nine days in the Shelby County Workhouse. He was specifically charged with receiving one man's suit stolen from Tommy Karam Company of Little Rock, Arkansas.

Tommy Karam, the owner of three stores operated under the name of Tommy's of Little Rock, identified the suit offered as an exhibit as having been a part of his stock of goods. It was manufactured by Lebo and contained the label "Tommy's of Little Rock." It further

had attached on the cost sleeve the manufacturer's ticket showing size and style and also a split ticket on the coat; it had been unaltered. When a sale is made, these tickets are removed and are posted in maintaining a perpetual inventory called a unit control system. The tickets showed when the suit was received, the stock number, the brand name and the price. When the tickets are removed and posted, the unit control system shows that the suit has been sold. The suit retailed for $145.00, and the wholesale value laid in the indictment is $87.00. More than ninety-nine percent of the suits of this quality are altered for the customer when sold. This suit, with its tickets attached and unaltered, was in the same condition for sale as it was when in the inventory of the store.

Mr. Karam's records did not show that a sale had been made. If sold, an entry would be made under this system. He did not know that the suit had been removed from his store until February, 1966, when the suit was shown him by police officers from Memphis. He then checked his records by using the number appearing on the ticket attached to the suit. He said that this suit was taken from his store, without being paid for or charged.

Pete Steven Lenti, an automobile salesman, identified this suit and another as being suits sold him by the defendant. The defendant came to the used car lot where Lenti worked and asked if he wanted to buy a suit. Lenti had known him six or seven months. The defendant had three or four suits in the trunk of his car. Lenti asked what price the defendant wanted, offering $100.00 for the suit in question and a Steinblock suit bearing Harvey's label with the tickets attached. It was also un-

altered. Lenti asked where the suits came from, to which the defendant replied, "Don't worry about that; if you want them, buy them." Lenti thereupon bought them.

James A. Starkey, Jr., the men's clothing buyer of Harvey's, testified that he had care, custody and control of the records of the men's clothing department of that store. He identified the Steinblock suit with its label and attached tickets as having been in Harvey's stock and said that it was not sold. His employer maintained essentially the same unit control system as Tommy's of Little Rock whereby tickets would be removed and an entry made from them showing the sale of the suit. No entry had been made to indicate a sale.

Royce I. Gates, a private investigator for a service then engaged in investigating thefts of clothing from stores, testified to numerous conversations with the defendant about the sale and purchase of stolen property and shoplifting. The defendant said his source of suits was "somewhere up North."

The defendant testified that he was in the retail merchandise business on Madison Avenue in Memphis; that he sold home freezers, appliances, furniture, radios, televisions and, in fact, almost all types of merchandise. He says that he was in his automobile on Union Avenue, and an individual claiming to be a jobber solicited him there; that this person was in an automobile with a Louisiana license, but the defendant did not know his name and could not identify him; he bought four suits, thereafter selling two to Lenti because they did not fit. He testified that he had talked with Gates but denied any conversation implicating himself in any illegal activities.

The defendant assigns as error that the Court erred by failing to follow the best evidence rule and admitted improper evidence, over the objection of defense counsel, which prejudiced him and deprived him of his constitutional right to a fair and impartial triatl under the rules of evidence.

Under this assignment, he contends that evidence introduced by both Mr. Karam and Mr. Starkey violated this rule.

No objection was made to Karam's testimony when introduced. On cross-examination, the defendant asked him to produce his records. Neither Karam nor Starkey had brought any business records from Little Rock or Nashville. The Court declined to order them brought in at that time.

The defendant objected to Starkey's testimony on the ground that it was proof of another crime.

At the conclusion of the State's proof, the defendant moved for a mistrial or, in the alternative, for the Court to instruct the jury to disregard the testimony of these two witnesses that they reviewed their records. The reason assigned for the motion was that the best evidence rule had been violated.

We think there was no error in the admission of the testimony of Karam and Starkey that their records did not show any sale of the suits in question.

In Commonwealth v. Torrealba, 316 Mass. 24, 54 N.E.2d 939 (1944), the defendant was convicted of petit larceny by shoplifting. The Court there said:

"Certain exceptions to the admission of evidence

remain to be considered. The manager of the Enterprise store was permitted to testify that it was the custom in his store to give a sales slip with each purchase. In this there was no error. (Citing cases.)

"The manager of each of the four stores testified that he had examined the record of the cash register on the afternoon in question, and that this did not show the sale of any article alleged in the indictment to have been the property of his store. This was a proper method of proving the absence of any record of sale. Commonwealth v. Best, 180 Mass. 492, 495, 62 N.E. 748; Blair's Foodland, Inc., v. Shuman's Foodland, Inc., 311 Mass. 172, 176, 40 N.E.2d 303; Wigmore on Evidence, 3d Ed., § 1244. In these circumstances the proof of the fact that an entry does not exist does not require the production of the records themselves or the laying of a foundation for the introduction of secondary evidence."

Wigmore on Evidence, 3rd Edition, Sec. 1244(5), says:

"* * * the fact that an *entry* in a record or accounting book *does not exist,* while in a sense it involves the document's terms, yet is usually and properly regarded as not requiring the book's production for proof; * * *."

In Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, the defendants were convicted of receiving stolen property, a suit from Levy Brothers in Memphis. After discovery of the suit in possession of the defendants, Levy Brothers' records were checked. It was found that a suit of the precise description was missing from their

stock, and the record contained no notation that this suit had ever been sold in the usual course of business. The suit in that case had not been altered and contained the regular stock tags. The proof of the identity of the suit and the absence of a sale was similar to the present case.

In Hooper v. State, 205 Tenn. 126, 325 S.W.2d 561 (1959), the Court held that it was not a violation of the best evidence rule to allow the Secretary of the Healing Arts Board to testify what his records reflected, when it was shown that the Secretary was the custodian of the records. While the records there were also voluminous, the Court held:

"* * * The court may in its discretion permit a witness, as this one was, who has examined the papers with reference to the point that he is being questioned about to testify as to the result of his examination. State ex rel. Stewart v. Follis, 140 Tenn. 513, 521, 205 S.W. 444."

■ Under the rules of evidence, it was not essential to produce the books themselves to show that they did not contain entries of sales. See Christoffel v. United States, 91 U.S.App.D.C. 241, 200 F.2d 734; Gurinsky v. United States, 5 Cir., 259 F. 378, 170 C.C.A. 354. This assignment is overruled.

The defendant next contends that the Court erred in admitting hearsay evidence in regard to a conversation between him and another party.

The testimony in question was related by the witness Gates who had a number of conversations with the defendant. On this occasion, he testified to a conversation he overheard at the airport between a Mr. Norton and

the defendant in which Norton told the defendant of a statement made to him (Norton) by another party. The defendant objected that this statement was hearsay. The Court overruled his objection and held that it was a conversation between Norton and the defendant about some other man.

The statement was not offered as evidence of the truth asserted in it but was offered without reference to its truth. The credit of the assertor was not involved. The hearsay rule does not operate to render inadmissible every statement repeated by a witness as made by another person. It does not exclude evidence to prove that a statement was made or a conversation was had, rather than the truth of what was said. See 29 Am.Jur.2d, Sec. 497, Evidence. There was no claim that the defendant made an admission by silence. If any error was made in admitting this statement, which we do not say, it was harmless. This error is overruled.

The third assignment contends that the verdict is against the law and the evidence and that there is no evidence to sustain it. This must be determined against him, because, after his conviction, the defendant is here under a presumption of guilt, which puts the burden upon him of showing that the evidence preponderates against the verdict and in favor of his innocence. We do not think he has done this and, therefore, overrule this assignment of error. Humphrey v. State, 187 Tenn. 377, 215 S.W.2d 791; Peek v. State, 213 Tenn. 323, 375 S.W.2d 863.

The judgment of the trial court is affirmed.

OLIVER and GILLIAM, JJ., concur.