**STATE of Tennessee, Appellee,**

v.

**Kimberly Yvette MATHIS, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 6, 1985.

J. Arthur Crews, II, Waldrop, Farmer, Breen & Bryant, Jackson, for appellant.

W.J. Michael Cody, Atty. Gen., James W. Thompson, Asst. Atty. Gen., Nashville, Leigh Grinalds, Asst. Dist. Atty., Jackson, for appellee.

## OPINION

TATUM, Judge.

The defendant, Kimberly Yvette Mathis, was convicted of the offense of passing forged paper and sentenced to a term of three years in the State penitentiary. On appeal, she presents two issues for review. She argues first, that certain evidence was erroneously introduced and second, that the evidence was insufficient to support the guilty verdict. We find both issues to be without merit and therefore affirm the judgment of the trial court.

A review of the evidence adduced at the trial is as follows. Milton Lewis Herron and his wife, Ramona Gail Herron, both testified that prior to the month of May, 1983, they had lived at 431 Preston Street in Jackson. Although the couple had moved from that address, they were expecting their 1983 Income Tax Refund check to be delivered there. Mr. and Mrs. Herron testified that they never received the tax refund check in the mail, but both stated that a check made payable to them in the sum of $627.00 represented the approximate amount of tax refund money they were expecting. They had not given anyone authorization to sign their names to the check and the signatures on the back of the check were not their signatures. Two Social Security identification cards, one containing the name Milton K. Herron and the other the name Romana E. Herron, did not belong to these witnesses.

Judy Love testified that on May 26, 1983, she was working as a bank teller for a branch office of the National Bank of Commerce of Jackson. On that date, two women and a man drove up to the bank's outside window at which she was working. The lady driver placed a tax refund check made payable to Milton and Ramona Herron and two Social Security identification cards into the teller's carrier. Ms. Love determined that the names on the cards had been altered and immediately became suspicious of the validity of the signatures on the check. She stated that she was acquainted with Mr. and Mrs. Herron as bank customers, but did not recognize any of the three individuals in the car as being Mr. or Mrs. Herron. As she was attempting to verify the correctness of the signatures on the check, the man got out of the car and approached the teller's window, asking what was the problem. The two women in the car then drove off and the

man left, running down the street where he reunited with the two women.

Nellie McGoughy, another teller with the bank, testified that on the morning of May 26, 1983, she was presented with an income tax refund check (made payable to Milton and Romona Herron) by a customer she knew, being Ms. Patricia Jones. She stated that Ms. Jones drove up to her teller's window and presented the check for payment. In the car with Ms. Jones were two other individuals, a man and the defendant. Ms. McGoughy informed Ms. Jones that the bank could not cash the check without identification, and returned the check to Ms. Jones.

During the early afternoon hours of that same day, Ms. McGoughy again observed Ms. Jones and the defendant in the same car parked at a different teller's window. The other teller, Judy Love, had in her possession the same income tax refund check which Ms. Jones had attempted to cash earlier that morning. In addition, Ms. Love had received two Social Security identification cards whose names had been altered so as to appear to be the cards belonging to Milton Herron and Ramona Herron. Ms. McGoughy positively identified the defendant as being the same woman who had accompanied Ms. Jones on both attempts to cash the forged tax refund check.

In the first issue, the defendant contends that portions of her hand-written statement to police should have been redacted so as to eliminate hearsay statements made to her. The statement, as redacted by the Court, stated:

"A. 'Social Security is 409–04–8866. Date of birth is the 5th and 31st of '61 and she is age 21.' 'On May the 26th, about 12:45 P.M., Patricia Jones came over to my house and asked me if I would go and cash a check for her. She received the check in her mailbox. It was made out to Milton and Ramona Herron for $627.00. I told her no, because I didn't want to get in any trouble. I didn't want to get in trouble. Around 1:10, we left my house and went over to Tony Campbell's house. He wanted to know what had happened—so long, and was she going to go and cash the check. We left his house and went down to the N.B.C. bank. When we drove up to the window she asked for $10.00 in quarters. Then she presented the check to the lady. She was told that in order for her to cash the check, Mr. Herron, the husband would have to be there. So she returned the check to Patricia Jones. We then drove off to Tony Campbell's home. I then asked Patricia what time it was, and she said it was 1:30. I told her I had to go. Now around 2:00 I went to the house to use the phone. When I went back outside, I asked Patricia what time it was, and she said it was almost 2:30. I told her I had to go, because I was going to pick up some money. She asked me to go up to her house. I went up there with her. About ten or fifteen minutes later, I seen the police. They knocked on the door, and she came to the door and let them in. They told her she was under arrest. I was in the bedroom, and they followed her in there. I left and started down the street. By the time I got halfway they stopped me and asked me was I with Patricia. I said yes. They told me to get in the car and go with them and I did. Just that. When I got to the police station, they charged me with forgery. During that time, she went back to the bank and tried cashing the check again.' "

The defendant argues that the hearsay "content of the statement" is such that the statement should not be admissible as an admission by the defendant.

■ We note first that hearsay evidence is testimony in court of a statement made out of court, such statement being offered as an assertion *to show the truth of matters asserted therein,* and thus resting for its value on the credibility of the out-of-court asserter. D. Paine, *Tennessee Law of Evidence,* § 47, page 47, citing McCormick, § 246 at 584 (2nd Ed.1972).

Many of the utterances attributed to others by the defendant in the statement are

not hearsay; they assert no fact. For example, the request to cash a check is not an assertion of fact; it is a mere request to do something in the future. See *State v. Hailey*, 658 S.W.2d 547 (Tenn.Crim.App.1983).

 More importantly, the entire statement, including all hearsay that might have been included in the statement, was a part of the admission and was competent evidence. An admission of a party-opponent, unlike most out-of-court assertions that are excepted to the hearsay rule, may be introduced in evidence even though the declarant lacked personal knowledge of the matter asserted. This has been recognized for 150 years. In *Miller v. Denman*, 16 Tenn. 233 (1835) the Supreme Court held:

"The court also erred in its charge relative to the admissions of the plaintiff. It can never be a question for the investigation of a jury upon what reasons a party is induced to make confessions. Whether he derives the facts admitted from his own knowledge or from information is perfectly immaterial, and the enquiry as to how he obtained information of what he admits is wholly irrelevant. The only question is, did he make the admissions freely and without any qualification? If so, they are, when satisfactorily proved, the highest evidence of the fact."

*See also Hearsay Handbook*, 2nd Edition, § 28.01, David F. Binder, and the cases therein cited. *Cf. Tenn. Law of Evidence*, Paine, § 54, footnote 11. It is not proper for the court to make inquiry as to the origin of the declarants' information concerning facts admitted. It makes no difference. The first issue is meritless.

With respect to the sufficiency of the evidence issue, the defendant contends that absent her written statement to police, no evidence of her guilty knowledge exists. As stated above, we find that the defendant's statement was competent evidence and, as such, properly admitted. Furthermore, we find that the evidence is sufficient to justify a rational trier of fact in finding the defendant guilty of offering to pass forged paper (T.C.A. § 39–3–804) beyond a reasonable doubt. T.R.A.P. 13(e).

Finding no error, we affirm the judgment below.

WALKER, P.J., and BYERS, J., concur.