IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 7, 2003 Session

## LINDA BRADLEY, ET AL. v. JOHN A. WADERKER, ET AL.

**Appeal from the Circuit Court for Montgomery County**
**No.   C12-293    Ross H. Hicks, Judge**

_____

**No. M2002-02017-COA-R3-CV - Filed August 13, 2003**

_____

A driver and the passengers in his 1993 Ford Explorer appeal a non-jury judgment of the Circuit Court of Montgomery County.  The Ford Explorer collided with a police cruiser at an intersection in the City of Clarksville.  The trial court held both drivers to be equally at fault and dismissed the case.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., J., and PATRICIA J. COTTRELL, J., joined.

Timothy K. Barnes, Clarksville, Tennessee, for the appellants, Linda Bradley, Stephen M. Deep, and Tamara Deep.

W. Timothy Harvey, Clarksville, Tennessee, for the appellees, John A. Waderker and The City of Clarksville Police Department.

### OPINION

On August 24, 1996, police officer John A. Waderker was driving his patrol vehicle in a northerly direction on Riverside Drive in Clarksville approaching the intersection of Riverside Drive and North Second Street.  At the same time, Stephen M. Deep (Plaintiff/Appellant) was driving his 1993 Ford Explorer in an easterly direction on North Second Street approaching the same intersection.  Passengers in his car were his wife, Tamara Deep, their minor child, Katelyn Deep, and Linda Bradley, the mother of Tamara Deep.  These passengers also joined Mr. Deep as Plaintiffs and Appellants in this matter.  The extension of Riverside Drive to the north of its intersection with North Second Street was named Kraft Street.  The Mid-Town Motel fronted the west side of Kraft Street to the north of the intersection.  Officer Waderker was responding to an emergency call at this motel.  The intersection is controlled by a traffic light.  The 1993 Ford Explorer was in the intersection traveling in an easterly direction when the patrol car, traveling northward on Riverside

Drive, struck the Explorer near the right rear of the Explorer causing the Explorer to flip completely over and ultimately come to rest upright on a portion of the McDonald's parking lot to the immediate southeast of the intersection. The patrol car continued on through the intersection and came to rest in Shoney's parking lot to the immediate northeast of the intersection.

Critical disputed questions of fact to be resolved at trial included:
1. At what speed was the patrol car traveling?
2. Were the audio and visual signals on the patrol car operating as the car entered the intersection?
3. Was the traffic control light red or green?
4. Did the drivers of either or both vehicles act with ordinary care under the conditions existing?

The case was heard by the trial judge on May 10, 2002, and, on July 15, 2002, a Memorandum Opinion was rendered disposing of all issues. This Memorandum of the trial court provided:

> This cause was heard by the Court, sitting without a jury, on May 10, 2002. After hearing all the proof and arguments of counsel, the matter was taken under advisement. After consideration of all the proof, arguments of counsel and review of the statutory and case law cited by counsel, the court makes the following finding and rulings.
>
> The proof shows and the court finds that on or about August 24, 1996, at around 7:00 a.m., the plaintiff, Steven M. Deep, was driving a 1991 Ford Explorer vehicle in an easterly direction on Providence Boulevard[1] in the City of Clarksville, approaching the intersection of Providence Boulevard with Riverside Drive. Traveling with Mr. Deep as passengers in his vehicle were his wife, Tamara, his daughter, Katelyn and Linda Tyler (now Bradley). At the same time, John A. Waderker, a Clarksville policer [sic] officer was traveling in his police cruiser in a northerly direction on Riverside Drive approaching the aforementioned intersection, responding to an emergency call. Officer Waderker's vehicle struck the Deep vehicle, causing it to flip onto its side, totaling the Deep vehicle and causing various injuries to the occupants of the Deep vehicle.
>
> The plaintiffs filed suit against the City and Officer Waderker seeking damages for injury to person and property. The City filed a counter-complaint for property damage to the policy [sic] cruiser. The plaintiffs' suit against Officer Waderker was previously dismissed.
>
> There were significant conflicts in the testimony of the parties and witnesses regarding whether the police cruiser was operating its emergency lights and siren and which vehicle was entering the intersection on a green light. Mr. Deep insists he had a green light and his wife, Tamara, supports that contention as does the testimony of a witness, Ms. Baete [sic] Stalmaker [sic]. Ms. Tyler (Bradley) also contends the

---

[1] Providence Boulevard and North Second Street are different names for the same street.

light "turned green as we approached the intersection." Officer Waderker, on the other hand, insists he had the green light but admits that the light might have turned yellow just as he approached the intersection.

Neither Mr. Deep nor his wife heard any sirens or saw any emergency lights. In fact, neither of them ever saw the police cruiser before impact. Ms. Tyler (Bradley) who was riding in the rear of the Deep vehicle heard a siren just as the vehicles collided. Officer Waderker maintains his sirens and emergency lights were both operating and had been engaged for the entire time since he was dispatched on the emergency call several minutes earlier. The witness, Ms. Stalmaker[sic], did not see lights or hear a siren but another witness, Anthony Janusas, who was in the parking lot of a business very near the intersection, saw the police cruiser on Riverside Drive with its emergency lights on, and heard the siren blaring as well. While he didn't see the vehicles collide, he did hear the screeching of tires, the sound of the impact and then turned to see the Deep vehicle in midair as it overturned. Mr. Janusas also described seeing the police cruiser roll into the Shoney's parking lot opposite the intersection after the collision.

All the witnesses agree that there was a significant impact between the vehicles. The police cruiser "T-boned" the Deep vehicle. The impact was so severe it caused the Deep vehicle to flip into the air before landing on its side. Even so, the police vehicle traveled on through the intersection before coming to a stop. Mr. Deep estimated his speed at 30-35 miles per hour and Officer Wederker [sic] estimated his speed at 20 miles per hour at impact.

T.C.A. § 55-8-108 provides in pertinent part that:

Emergency vehicles (b)(1) A driver of an authorized emergency vehicle operating such vehicle in accordance with the provisions of subsection (a) may:

(B) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(C) Exceed the speed limits so long as life or property is not thereby endangered;

(2) The provisions of subdivision (b)(1) shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons ...

T.C.A. § 55-8-132 provides in pertinent part:

(a) Upon the immediate approach of an authorized emergency vehicle . . .

(1)  The driver of every other vehicle shall yield the right-of-way ...

(b)  This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

Based on all the proof in this case, the court finds by a preponderance of the evidence that Mr. Deep was approaching the intersection at a speed of 30-35 miles per hour and that he had a green light, and thus the apparent right-of-way at the time his vehicle entered the intersection.  However, Mr. Deep also testified that he was looking ahead and that he "doesn't remember looking to his left or right" as he approached or entered the intersection.  The evidence supports Officer Wedeker's [sic] contention that the police cruiser's emergency lights and sirens were operating as he approached or entered the intersection.  But the evidence also indicates that Officer Wedeker [sic] was doing so at a speed well in excess of the 20 miles per hour he testified to.  He was not driving with due regard for the safety of others nor did he slow down to enter the intersection in a manner as would be necessary for safe operation of his vehicle.

Mr. Deep relies on the green light.  The City relies on the emergency lights and siren.  Regardless of the color of the traffic light or the use of emergency lights or sirens, both drivers had a duty to each other which they failed to perform.  "A green or go signal is not a command to go, but a qualified permission to proceed lawfully and carefully in the direction indicated.  The driver with a favorable traffic signal does not enjoy an absolute right of way and may not arbitrarily exercise his right of way, and despite his superior position he must exercise appropriate care with respect to such matters as speed, lookout, and control . . .  The presence of signals at a crossing does not relieve a driver from the duty to keep a proper lookout when entering and crossing the intersection, and in this respect he must be held to have seen what looking would reveal . . ."

Mr. Deep's admission that he did not look to his left or right is fatal.  By not doing so, he never saw the approaching police vehicle when it was clearly there to be seen.  On the other hand, Officer Waderker, had he been as careful as the law requires, would have also been able to avoid the accident.  Both drivers are equally at fault and both the original action and the counter action should be dismissed.  Court costs are to be divided equally and no discretionary costs will be awarded.

Plaintiffs timely appealed the action of the trial court, and Defendants took issue on appeal with the refusal of the trial court to award the City of Clarksville judgment for damages to the police vehicle.

Appellant asserts the issues to be:

Issue I:        Did the Trial Court err in finding both drivers equally at fault?

A) Was Officer Waderker operating his police cruiser's audible and visual signals when entering the intersection where the collision occurred?

B) Did the Plaintiff enter the intersection while their traffic light was green?

C) Did the Court err in not attributing more than 50% of the proximate cause of the accident to the driver of the police vehicle, John A. Waderker, due to the manner in which he entered the intersection?

D) Did the Court err in finding that Stephen M. Deep's failure to look left or right while entering the intersection made him equally responsible for the collision?

Issue II. Did the Trial Court err in allowing statements of the radio dispatcher to be testified to by the police officer over the hearsay objection of Plaintiffs' counsel?

Taking these issues in reverse order, prior to the accident, Officer Waderker received a call from the dispatcher at the police department advising him that an individual was having trouble breathing and experiencing chest pain at the Mid-Town Motel located on Kraft Street, north of North Second Street. He was advised that the medical unit had arrived but would not enter the room until police personnel arrived to make sure it was clear and safe. Plaintiff objected to this testimony on hearsay grounds, which objection was overruled by the trial court.

This evidence is not hearsay.

Hearsay evidence is defined as "testimony in court or written evidence, of a statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value on the credibility of the out-of-court asserter." *See* D. Paine, *Tennessee Law of Evidence* § 47 (1974) at 47, quoting *McCormick on Evidence* § 246 (2nd ed. 1972) at 584. This definition has been adopted in Tennessee. *See State v. Mathis*, 702 S.W.2d 179, 181 (Tenn.Crim.App.1985); *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn.Crim.App.1983).

The hearsay evidence rule does not operate to exclude every statement made to a witness by a third person. *Richter v. State*, 1 Tenn.Crim.App. 270, 277, 438 S.W.2d 362, 365 (1968); *State v. Hailey*, supra. Where, as here, the statement is admitted into evidence merely to show the officer's reason for going to the car lot, the statement is admissible, because the testimony is not being offered to prove the truth of the matters asserted by the out-of-court declarant, and is clearly not hearsay.

*State v. John Polk and Diane Jones*, C.C.A. at Jackson, opinion filed February 14, 1980; *State v. Clemmie Lee Rhyan*, C.C.A. at Jackson, opinion filed July 9, 1981.

*State v. Miller*, 737 S.W.2d 556, 558-59 (Tenn.Cr.App.1987).

The hearsay objection was properly overruled as the truth of what may or may not have been happening at the Mid-Town Motel is immaterial. The evidence merely showed the reason for Officer Waderker making an emergency run to the Mid-Town Motel.

The rest of the case involves, entirely, the credibility of witnesses. Stephen Deep and the passengers in the Ford Explorer testified that they did not see blue lights or hear any sirens prior to the accident. Bette Stalnaker testified that she did not hear a siren or see blue lights on the patrol vehicle prior to the accident. On the other hand, Officer Waderker and another witness, Deputy Anthony Janusus, testified that the blue lights were flashing and the siren was sounding as the patrol vehicle entered the intersection. In the same manner, a factual dispute developed as to which vehicle had the ordinary right-of-way designated by the traffic light. On this conflicting testimony, the trial court held that the police cruiser entered the intersection with its audible and visual signals activated and that Plaintiff entered the intersection with a favorable green light. The trial court, assessing the credibility of all the witnesses, held that the accident was caused by the failure of Mr. Deep to look to his left or right prior to entering the intersection, causing him to fail to see what was clearly to be seen. The trial court, likewise, held that Officer Waderker had a duty to enter the intersection with due care and that he had failed to do so. The trial court, thereupon, attributed fault equally to the parties.

Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which ability best situates trial judges to evaluate witness credibility. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn.1990). Trial courts are in the most favorable position to resolve factual disputes depending on credibility determinations. *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn.Ct.App.1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315-16 (Tenn.1987).

None of the factors such as driving under the influence of intoxicants or seeing the oncoming vehicle and, in spite of such, deciding to go on anyway, appear from the evidence in this case. Such factors appeared in *Griggs v. Mixon*, No. 02A01-9504-CV-00087, 1996 WL 444104 (Tenn.Ct.App. Aug.6,1996) and might have motivated this Court to change the percentages as found by the trial judge. Such reallocation of percentages is only possible upon an affirmative finding by the appellate court that the findings of the trial court are clearly erroneous. *See Wright v. City of Knoxville*, 898 S.W.2d 177 (Tenn.1995). In this case, the findings of the trial court are not clearly erroneous.

We have also considered the issue raised by Defendant regarding damages to the police vehicle belonging to the City of Clarksville and find it to be without merit.

-6-

The judgment of the trial court is in all respects affirmed, and the costs of the cause are assessed to Appellants.

_____
WILLIAM B. CAIN, JUDGE