**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

           v.

LUIS MIGUEL DIAZ-LOPEZ,
           *Defendant-Appellant.*

No. 09-50604

D.C. No.
3:09-cr-00864-JM-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Submitted August 31, 2010*
Pasadena, California

Filed November 9, 2010

Before: Diarmuid F. O'Scannlain, Ronald M. Gould and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Gould

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

18439

**COUNSEL**

Karen P. Hewitt, United States Attorney, Bruce R. Castetter, Thomas B. Snyder, Assistant United States Attorneys, United States Attorney's Office, San Diego, California, for plaintiff-appellee United States of America.

Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant Luis Miguel Diaz-Lopez.

## OPINION

GOULD, Circuit Judge:

At a bench trial, Luis Diaz-Lopez ("Diaz") was convicted of being a removed alien found in the United States in violation of 8 U.S.C. § 1326(a). Diaz contends that the district court erred in admitting testimony about the results of a database search introduced to show that Diaz had no permission to return, urging theories that the testimony lacked foundation and that it violated the best evidence rule.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

Diaz was born in and is a citizen of Mexico. On February 13, 2009, a Border Patrol agent found and arrested Diaz on a road in California, north of the United States-Mexico border. The government charged Diaz under 8 U.S.C. § 1326(a) with being a removed alien found in the United States without permission. At a bench trial, the government introduced testimony from a Border Patrol agent stating that he had performed a search of the Computer Linked Application Information Management System ("CLAIMS") database using Diaz's name, alien number, and date of birth, and had found no record of Diaz having filed a Form I-212, which is the required application for permission to reapply for admission to the United States after having been previously removed.

The district court found Diaz guilty and sentenced him to twenty-one months in prison and three years of supervised release. This appeal followed.

---

[1]We address the other issues Diaz raised on appeal in a concurrently filed memorandum disposition. In this published opinion we address only whether admission of the agent's testimony regarding the database search lacked foundation and whether it violated the best evidence rule.

## II

Diaz appeals the district court judge's decision to admit the Border Patrol agent's testimony about the database search. He contends that the testimony lacked foundation and that it violated Federal Rule of Evidence 1002 (the "best evidence rule"). We review the district court's decision to admit this testimony for abuse of discretion. *United States v. Hernandez*, 109 F.3d 1450, 1452 (9th Cir. 1997).

**[1]** We reject Diaz's claim that the agent's testimony lacked foundation. At the bench trial, the agent testified that he had performed a search of the CLAIMS database using Diaz's name, alien number, and date of birth, and found no record of Diaz having filed a Form I-212. Diaz concedes that this testimony is governed by Federal Rule of Evidence 803(10), an exception to the hearsay rule allowing testimony to prove the absence of a public record. However, Diaz argues that this testimony lacked foundation because the agent did not establish the trustworthiness of the CLAIMS database by describing the processes by which database entries are made or deleted and errors are identified. *See United States v. Rich*, 580 F.2d 929, 938 (9th Cir. 1978) ("To merit judicial reliance on the contents of records, it is necessary that the proponent of particular records establish the trustworthiness of those records.").

**[2]** The agent testified about his experience with and personal use of the CLAIMS database and his knowledge of its maintenance. The government need not produce a computer programmer or expert witness to testify as to the accuracy of the database. *See U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1045 (9th Cir. 2009). For purposes of establishing foundation, it was sufficient that the agent testified that he was familiar with both the process of searching the records and the government's recordkeeping practices with regard to the database. *See id.* The testimony established that the government relied on the CLAIMS database in con-

ducting its business. *See id.* The agent was not required to explicitly state that his search was "diligent." *See United States v. Neff*, 615 F.2d 1235, 1241-42 (9th Cir. 1980) (holding that testimony of a government agent that his search of an IRS database revealed no records was sufficient for purposes of Rule 803(10)). Diaz has not seriously challenged the accuracy of the CLAIMS database, "and nothing in the record on appeal reveals a lack of trustworthiness." *Rich*, 580 F.2d at 939 (holding that it is necessary that "there be some evidence suggesting the unreliability of the [challenged] records"). Diaz's attack on the extent of the agent's knowledge regarding particular database policies and procedures was a fair subject for a reasonable cross-examination, but goes to the weight accorded to the agent's testimony by the factfinder rather than to its admissibility. The agent's testimony laid a sufficient foundation for this relevant evidence to be admissible. The district court did not abuse its discretion by admitting testimony about the results of the database search.

## III

**[3]** Diaz next argues that the agent's testimony regarding the results of the CLAIMS database search violated Federal Rule of Evidence 1002, which codifies a principle long referred to at common law as the "best evidence rule." *See* Fed. R. Evid. 1001-1008. Diaz's assertion challenging the testimony under the best evidence rule presents a question of first impression in our circuit. We must decide if testimony that a search of a computer database revealed no record of a matter violates the best evidence rule when it is offered without the production of an "original" printout showing the search results. We hold that it does not.

**[4]** As we previously have observed, the best evidence rule "requires not, as its common name implies, the best evidence in every case but rather the production of an original document instead of a copy." *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1318 (9th Cir. 1986). Federal Rule of Evidence 1002,

on its face, is simple and clear in its statement: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. For purposes of this rule, " '[w]ritings' and 'recordings' consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation." Fed. R. Evid. 1001. But despite its simple name and concise definition, experience has shown that application of this principle, as with other difficult questions of the law of evidence, may not "safely be handled in slap-dash fashion." John MacArthur Maguire, *Evidence: Common Sense and Common Law*, at v (1947).

The scope, application, and relevance of the best evidence doctrine have been debated by treatise-writers for centuries. Professor Thayer thought it would "help to clear the subject, and keep our heads clear, if we drop the name and the notion of any specific rule of the Best Evidence." James Bradley Thayer, *A Preliminary Treatise on Evidence at the Common Law* 507 (Boston, Little, Brown, and Co. 1898). A century later, however, the name is still with us. Although the best evidence doctrine in the federal courts has since been refined to encompass only the requirement for originals set out in the Federal Rules of Evidence (and in no way involves comparing evidence to determine which is "the best"), it has also been enlarged to include not just writings, but also recordings and photographs. The modern doctrine appears to be a rule of evolving scope (applying to ever-increasing varieties of media) with less-frequent application (owing to the easy availability of exact duplicates, modern discovery procedures, and exceptions to the federal version of the best evidence rule).

**[5]** The animating purpose of the best evidence rule has been persuasively summarized as follows:

[P]resenting to a court the exact words of a writing is of more than average importance, particularly in the case of operative or dispositive instruments such as deeds, wills or contracts, where a slight variation of words may mean a great difference in rights. In addition, it is to be considered (1) that there has been substantial hazard of inaccuracy in some of the commonly utilized methods of making copies of writings, and (2) oral testimony purporting to give the terms of a writing from memory is probably subject to a greater risk of error than oral testimony concerning other situations generally. The danger of mistransmitting critical facts which accompanies the use of written copies or recollection, but which is largely avoided when an original writing is presented to prove its terms, justifies preference for original documents.

2 George E. Dix et al., *McCormick on Evidence* § 232 (Kenneth S. Broun, ed., 6th ed. 2009). Professor Wigmore offered a similar explanation of the "fundamental notion" of the best evidence rule:

[I]n writings the smallest variation in words may be of importance. . . . Thus the rule applies only to the *terms of the document*, and not to any *other facts about the document*. In other words, the rule . . . does not apply to exclude testimony which concerns the document without aiming to establish its terms . . . .

4 John Henry Wigmore, *Evidence in Trials at Common Law*, § 1242 at 574 (James H. Chadbourn rev. 1972).

We turn now to the issue presented by Diaz on this appeal. Diaz contends that, under Federal Rule of Evidence 1002, the government was required to produce an "original" to show that the CLAIMS database did not contain any record of Diaz having filed an I-212. When records or data are stored "in a

computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' " Fed. R. Evid. 1001(3). Diaz argues that the government should have introduced a printout of the search results from the CLAIMS database rather than testimony from the agent performing the search.

[6] Diaz is correct that the CLAIMS database falls within the scope of the best evidence rule, because the database is a "[w]riting[ ] or recording[ ] . . . set down by . . . magnetic impulse . . . or electronic recording, or other form of data compilation." Fed. R. Evid. 1001. The next question is whether the evidence was introduced "[t]o prove the content of a writing, recording, or photograph." Fed. R. Evid. 1002. We conclude that it was not. The agent's testimony that he searched the database and found no record of Diaz having filed an I-212 is similar to testimony "that an event did *not* occur because relevant records contain no mention of it. This negative type of testimony is usually held not to constitute proof of contents and thus not to require production of records." Dix et al., *supra*, at § 234 (emphasis in original). Indeed, the advisory committee's note to Rule 1002 states that the best evidence rule does not apply to "testimony that books or records have been examined and found not to contain any reference to a designated matter." Fed. R. Evid. 1002, advisory committee's note.[2]

---

[2]We have not passed explicitly on this issue, but other jurisdictions are in accord. *See United States v. Jewett*, 438 F.2d 495, 497-98 (8th Cir. 1971) (holding that there was no error in admitting testimony that a search of books and records revealed no transfer of title to a property); *Aiuppa v. United States*, 393 F.2d 597, 602 (10th Cir. 1968) (finding no error in allowing two employees to testify that they searched government records in their regions and found no record that defendant had applied for permission to possess more than the statutory limit of mourning doves), *vacated on other grounds by Giordano v. United States*, 394 U.S. 310 (1969); *McDonold v. United States*, 200 F.2d 502, 504 (5th Cir. 1953) (finding no error where a witness testified that he examined the books and records of the company and there was no record of payment by the defendant); *Allen v. Wells Fargo Bank Minn., N.A.*, 334 B.R. 746, 750 n.7 (D.D.C. 2005) (holding that the best evidence rule did not apply to testimony that voicemail logs did not contain a record of a message).

**[7]** Diaz concedes that if no record were found pursuant to an agent's physical search of an A-file, testimony to that effect would be admissible under Federal Rule of Evidence 1002. However, Diaz asserts that, although the Rule applies to computer databases, the advisory committee note's limitation on the Rule applies only to searches of "physical" records. We decline to adopt such a position. First, we do not see any meaningful difference between a search of a physical file and a search of a database. Databases contain "physical" records, too, even if those records are not printed on paper. Second, the best evidence rule, like us, now survives in the twenty-first century. It is common sense, and not mere symmetry, to say that because the rule applies to computer databases, the rule's limitations must also apply to such databases. It is reasonable to apply the best evidence rule to new circumstances as technology evolves, but when the rule is extended, courts will necessarily be required to decide if the limits on the rule extend as well. When, by virtue of new technology, the best evidence rule can be applied to testimony about databases, the traditional limits on the rule should be properly extended as well.

Our decision here does not conflict with our holding in *United States v. Bennett*, 363 F.3d 947 (9th Cir. 2004). There, we held that testimony about data retrieved from a boat's global positioning system ("GPS") was barred by the best evidence rule because the testimony had been introduced to prove the "content" of the GPS, which, in turn, was evidence that the defendant had come from Mexico. *Id.* at 953. But *Bennett* concerned testimony about the *contents* of the GPS data, not testimony about the *absence* of data. In that case, we concluded that "the GPS itself—or a printout or other representation of such data—. . . would have been the best evidence of the data showing [the defendant's] travels." *Id.* at 954 (citations omitted). We reached that decision because the testimony about the GPS data was introduced to prove its content (i.e., the location and travels of a boat). In Diaz's case, the government did not introduce testimony to prove the con-

tent of a writing; rather, the government introduced testimony to prove that a particular record was *not* part of the contents of a database. Moreover, the testimony about the search of the database was not testimony in which "the smallest variation in words may be of importance." Wigmore, *supra*; *see also State v. Nano*, 543 P.2d 660, 662 (Or. 1975) ("In the present case the witness testified to what the document did not contain; that is, the sales records did not show any sales of the calculators. . . . [T]his is not testimony in which 'the smallest variation in words may be of importance.' " (quoting Wigmore, *supra*)).

It might be contended that, while the "smallest variation in words" is not of importance in the case of testimony regarding the negative results of a database search, such variations may well be significant if the testimony is offered to prove what particular search terms were used to search a database. However, even if Diaz had raised this argument, it would not aid his case. Any dispute about the particular search terms used by the agent for searching the CLAIMS database is not a dispute about the contents of the database, or about the contents of any records in the database, but rather a dispute about the specific actions performed by the agent. As a result, the best evidence rule would not apply because it applies only to writings, recordings, and photographs (as defined by Federal Rule of Evidence 1001), and not to actions. Moreover, even if the search terms used to search the database were genuinely in dispute, Diaz was free to cross-examine the agent who performed the search. Any doubts that might be raised by Diaz regarding the completeness of the search or the search terms used are a proper subject for a reasonable cross-examination, and go to the weight accorded to the testimony, not its admissibility under the best evidence rule.

**[8]** We hold that Federal Rule of Evidence 1002 is inapplicable to the agent's testimony that his search of the CLAIMS database revealed no record of a Form I-212 filed by Diaz.

The district court did not abuse its discretion by admitting the agent's testimony.

**AFFIRMED**.