**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SHAWN S. PARKER,
*Defendant-Appellant*.

No. 13-30157

D.C. No.
2:12-cr-02089-WFN-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted
June 4, 2014—Seattle, Washington

Filed July 31, 2014

Before: M. Margaret McKeown and Paul J. Watford,
Circuit Judges, and Barbara Jacobs Rothstein, Senior
District Judge.[*]

Opinion by Judge McKeown

---

[*] The Honorable Barbara Jacobs Rothstein, Senior District Judge for the
U.S. District Court for the Western District of Washington, sitting by
designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a commercial snowmobile operator's conviction on two counts of conducting a "work activity or service" on United States Forest Service land without a special use authorization and one count of interfering with a Forest Service officer engaged in the performance of his official duties.

The panel held that although the defendant's clients congregated on a county road subject to an easement, the Forest Service had jurisdiction over his activities because, under 36 C.F.R. § 261.1(a)(2), they "affect[ed], threaten[ed], or endanger[ed] property of the United States administered by the Forest Service," and because, under § 261.1(a)(1), they took place "in the National Forest System."

The panel rejected the defendant's contention that the regulatory framework governing Forest Service control over roads is unconstitutionally vague.

The panel held that a Forest Service officer's testimony regarding the absence of a special use authorization was properly admitted under Fed. R. Evid. 803(10).

The panel rejected the defendant's sufficiency-of-evidence challenge to his conviction on one of the unlawful-work-activity counts.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Kraig Robert Gardner (argued), Kirkham Law Office, Ellensburg, Washington, for Defendant-Appellant.

Tyler H.L. Tornabene (argued), Assistant United States Attorney, Michael C. Ormsby, United States Attorney, Russell E. Smoot, Assistant United States Attorney, Katharine Brereton, United States Attorney Law Clerk, Spokane, Washington, for Plaintiff-Appellee.

## OPINION

McKEOWN, Circuit Judge:

Shawn Parker, a commercial snowmobile operator, was convicted on two counts of conducting a "work activity or service" on United States Forest Service land without a special use authorization and one count of interfering with a Forest Service officer engaged in the performance of his official duties, both violations of 36 C.F.R. Part 261. We affirm his conviction. Special use permits are required for certain activities, such as commercial ventures, that occur on Forest Service lands or affect such property. Although Parker's clients congregated on a county road subject to an easement, the Forest Service had jurisdiction over his activities because they "affect[ed], threaten[ed], or endanger[ed] property of the United States administered by the Forest Service," *id.* § 261.1(a)(2), and because they took place "in the National Forest System." *Id.* § 261.1(a)(1). We reject Parker's claim that the regulatory framework governing Forest Service control over roads is unconstitutionally vague.

## BACKGROUND

This case focuses on two separate incidents involving Forest Service Road 4300, also known as Salmon la Sac Highway ("the Highway"), in the Okanogan–Wenatchee National Forest (the "Forest") in Washington State. In February 2011, Forest Service Officer Steve Roberson was patrolling a stretch of the Highway just north of Cooper River Junction, where he encountered trucks, trailers, and snowmobile equipment belonging to Parker, whom he had known for fifteen years. The Highway itself was bare, without snow, but snowmobilers often used the adjacent groomed trails for recreational purposes.

Roberson, who arrived in a marked Forest Service vehicle and wearing his duty gear, saw Parker talking with about twelve people, dressed in snowmobile clothing, standing near fourteen snowmobiles. Roberson reminded Parker, as he had in the past, that Parker had no special use authorization, and told Parker that he was in violation of Forest Service regulations and should turn his equipment around. Parker refused to do so, and told Roberson that his clients "had rented and paid for [the snowmobiles]," and that they "were going to ride and he [woul]d take the ticket." Parker had previously been cited for violations of the same regulations, but Roberson did not arrest Parker on this occasion because Parker was hostile. Roberson watched as the snowmobiles drove away.

Later that year, in mid-December, Roberson again encountered Parker near the Cooper River Junction. A truck from Parker's company, Cascade Playtime Rentals, was parked along the Highway, and Roberson saw Parker talking with a group of about fifteen people surrounded by a large

number of snowmobiles. Parker looked at Roberson, pulled his helmet on, and led all but two of the snowmobilers into the National Forest on snowmobiles, including onto Forest Service Road 4600, also known as Cooper Lake Road. Parker did not display a special use authorization to Roberson during this encounter. On this day, as before, the Highway had been cleared of snow.

After a bench trial before a magistrate judge, Parker was found guilty of two misdemeanor counts of "conducting any kind of work activity or service" on National Forest land without a special use authorization in violation of 36 C.F.R. § 261.10(c), and one misdemeanor count of threatening, resisting, intimidating, or interfering with a Forest Service officer engaged in the performance of his official duties in the protection or administration of National Forest land in violation of 36 C.F.R. § 261.3(a). The district court affirmed the decision of the magistrate judge and sentenced Parker to two years' probation and a fine.

## ANALYSIS

### I. FOREST SERVICE JURISDICTION OVER ACTIVITIES AFFECTING FOREST SERVICE LAND

Parker's principal argument is that his actions took place on Salmon la Sac road—a Kittitas County road authorized by an easement from Plum Creek Timber Company to the county—and that the Forest Service's own regulations explicitly exempt such a road from the operation of 36 C.F.R. Part 261. The flaw in this reasoning is that Parker cites only part of the relevant regulation and overlooks the Forest Service's broad authority to regulate activities "affecting" Forest Service land.

Part 261 prohibits certain activities in and around Forest Service property, including, as relevant here, selling merchandise or conducting work activities or services not authorized by federal law, regulation, or special-use authorization. 36 C.F.R. § 261.10(c). The prohibitions of Part 261 apply when an act or omission "occurs in the National Forest System or on a National Forest System road or trail," *id.* § 261.1(a)(1), or when the act or omission "affects, threatens, or endangers property of the United States administered by the Forest Service." *Id.* § 261.1(a)(2). Parker conveniently skips over the proviso in (a)(2).

The regulation defines "National Forest System" to include "all national forest lands and waters reserved or withdrawn from the public domain of the United States [or] . . . acquired . . . ." *Id.* § 261.2. A "[f]orest road or trail" is defined as

> [a] road or trail wholly or partly within or adjacent to and serving the National Forest System that the Forest Service determines is necessary for the protection, administration, and utilization of the National Forest System and the use and development of its resources[,]

and "National Forest System road" is defined as a subset of the above, namely

> [a] *forest road* other than a road which has been authorized by a legally documented

right-of-way held by a State, county, or other local public road authority.

*Id.* (emphasis added).

It appears that the Highway at issue here was not a "National Forest System road," because that term is reserved for forest roads not subject to easements held by public entities, *id.*, and Kittitas County had been granted an easement over the Highway "for public road purposes."[1] Although the existence of a right-of-way or an easement may remove a road from the definition of "National Forest System road," it does not deprive the Forest Service of authority over the road.

To begin, exempting roads subject to an easement from the definition of "National Forest System road or trail" was expressly meant not to "in any way affect the Forest Service's jurisdiction to enforce traffic laws, to protect NFS lands underlying routes, or to regulate use, including use on valid rights-of-way." Travel Management; Designated Routes and Areas for Motor Vehicle Use, 70 Fed. Reg. 68,264, 68,275 (Nov. 9, 2005); *see also id.* at 68,283 ("Part 261– Prohibitions," paragraph 2) (noting that the comments at 68,275 applied to both § 261 and § 212). Although Parker cites language, drafted for inclusion in the rule, that may have suggested that the Forest Service was ceding all authority

---

[1] The magistrate judge found that the easement did not create exclusive rights in Kittitas County; that it permitted Kittitas County to "extend rights and privileges for use . . . to other governmental agencies"; and that it was "never intended to deprive any other governmental agency of the ability or jurisdiction to regulate conduct on the highway or within its described easement."

over roads with rights-of-way, the language Parker references was deleted from the final rule. *Id.* at 68,275. Because the Forest Service's enforcement actions in Parker's case related to the "protect[ion of] NFS lands underlying routes" or the "regula[tion of] use," the Forest Service retained jurisdiction over those activities whether or not the road is not a National Forest System road.

Recognizing the Forest Service's broad authority to protect its lands, we turn to the specific authority granted under § 261.1(a)(2), which covers acts or omissions that "affect[], threaten[], or endanger[] property of the United States administered by the Forest Service." "It is well established that [the Property Clause of the Constitution[2]] grants to the United States power to regulate conduct on non-federal land when reasonably necessary to protect adjacent federal property. . . ." *United States v. Lindsey*, 595 F.2d 5, 6 (9th Cir. 1979) (per curiam). *Lindsey*, like Parker's case, involved regulations issued pursuant to 16 U.S.C. § 551 and encompassing activities that "affect[], threaten[] or endanger[]" Forest Service property. Two people were charged with violating Department of Agriculture regulations prohibiting the use of campfires without a permit. *Id.* at 6, n.1. We held that the federal government had jurisdiction to regulate the building of campfires on land "legally on the river bed, title to which is held by the State," in order to protect the surrounding National Forests, because the government retained jurisdiction under the Property Clause. *Id.* at 6–7. *Accord United States v. Alford*, 274 U.S. 264, 267

---

[2] The Property Clause provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV.

(1927) (holding that Congress could "prohibit the doing of acts upon privately owned lands that imperil the publicly owned forests," in a case involving the building of fires); *United States v. Anglin*, 438 F.3d 1229, 1230 (10th Cir. 2006) (holding that it was "irrelevant" that defendants were presented while off public land with a notice that they had violated Part 261 while on public land); *Free Enter. Canoe Renters Ass'n of Missouri v. Watt*, 711 F.2d 852, 856 (8th Cir. 1983) (noting, in a case involving permit requirements for canoe outfitters whose commercial activities took place on public roads within a National Scenic Riverway, that Congress can regulate conduct not on federal land that would threaten federal land).

The commercial activity here, like building a fire or launching a canoe, is one that has implications for National Forest land even if commenced on property adjacent to the forest. As the magistrate judge noted, "[r]enting snowmobiles to multiple individuals untrained or inexperienced in their operation might cause fire, safety or environmental hazards within the National Forest." Indeed, the Forest Service regulations specifically provide for certain restrictions and prohibitions on use by over-snow vehicles. 36 C.F.R. § 212.81. But more importantly, Parker was running a commercial operation that was predicated on dispatching snowmobiles into the National Forest, and he did so without obtaining the required special use permit. That this activity "affect[ed], threaten[ed], or endanger[ed]" National Forest lands is beyond argument. *Id.* § 261.1(a)(2).

The Forest Service also had jurisdiction over Parker's activities because they took place "in the National Forest System" for the purposes of § 261.1(a)(1). Roberson encountered Parker on the Highway, but Parker led a group

of his clients "further into the National Forest on snowmobiles." The district court adopted the finding of the magistrate judge that Parker's "commercial or work activity" was "done by the delivery of multiple customers and snowmobiles *to National Forest land at the side of the Salmon la Sac highway*." Photographic evidence admitted at trial showed that the Highway itself had been cleared of snow on the dates of the encounters, and as such was unsuitable for snowmobiling, indicating that Parker's clients were destined for the Forest.

In other words, Parker's activities both took place "in the National Forest System" and "affect[ed], threaten[ed], or endanger[ed] National Forest land." For these reasons, we hold that the Forest Service had jurisdiction over Parker's activities on the Highway under both § 261.1(a)(1) and (a)(2).

## II. VAGUENESS CHALLENGE TO PART 261

We next consider whether Part 261 is unconstitutionally vague because § 261.2, which defines "National Forest System road or trail," "exempt[s] . . . county roads from the prohibitions of part 261."[3] Although Parker did not raise the constitutionality of Part 261 before the district court, we permit the as-applied challenge because a person may "attack the constitutionality of the law under which he is charged for the first time on appeal." *United States v. Tabacca*, 924 F.2d 906, 912 (9th Cir. 1991) (citing *United States v. Gilbert*, 813 F.2d 1523, 1528–29 (9th Cir. 1987) (noting that "[s]uch

---

[3] We construe Parker's argument in the reply brief as reiterating that his challenge to the regulations on vagueness grounds is an as-applied, rather than a facial, challenge.

claims are attacks on the sufficiency of the information to charge an offense")).

Laws are void for vagueness if they "fail[] to give adequate notice to people of ordinary intelligence of what conduct is prohibited." *Id.* Because Parker's challenge does not involve the First Amendment, we "need only examine the vagueness challenge under the facts of the particular case," and need not "address whether the statute is vague as to its other potential applications." *Id.* (internal quotation marks omitted). We must "decide whether, under a reasonable construction of the statute, the conduct in question is prohibited." *Id.* (internal quotation marks omitted); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 946 (9th Cir. 2013).

Part 261 has several sections, and a fair reading of the regulation as a whole reveals that the definition of "National Forest System road" is only one avenue for determining prohibited conduct under the regulation. As discussed above, the prohibitions extend not only to National Forest System roads (which exempt public rights-of-way) but also to activities that "occur" in the national forest or "affect" property administered by the Forest Service. 36 C.F.R. §§ 261.1(a)(1)–(2); *cf. United States v. Vasarajs*, 908 F.2d 443, 449 (9th Cir. 1990) (noting that "it would seem fair to charge the individual with such knowledge of a statute's meaning and applicability as he could obtain through competent legal advice") (internal quotation marks omitted).

Not surprisingly, Parker does not suggest that the overall requirement for a special use permit is unclear. Instead he takes aim at the narrow issue of the categorization of the county road. However, in keeping with the principles

described above, a person of ordinary intelligence would be aware that dispatching snowmobiles from a road into a National Forest is an activity that both occurs in, and affects, property administered by the Forest Service. Of particular significance in Parker's situation, where a defendant's conduct demonstrates that he was on notice that the conduct was proscribed by a statute, we have held that the person's conduct will defeat, or contribute to the defeat of, an as-applied challenge. *See United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009). Parker knew that he needed a special use permit to operate his snowmobile business from the Salmon la Sac road.  Roberson told him so before these incidents, Parker was previously cited for the same violation, and when Roberson confronted him in February, Parker said he would "take the ticket," thus acknowledging that he knew "the rules of the road," so to speak. Parker's vagueness challenge to Part 261 is without merit.

## III.     EVIDENCE REGARDING NON-EXISTENCE OF A RECORD

Parker does not claim that he had a special use authorization. He does, however, challenge whether the magistrate judge abused his discretion in admitting Roberson's testimony regarding the absence of such authorization.

Federal Rule of Evidence 803(10) permits a court to admit "[t]estimony—or a certification under Rule 902—that a diligent search failed to disclose a public record or statement" where "the testimony or certification is admitted to prove that the record or statement does not exist" or that "a matter did not occur or exist, if a public office regularly kept

a record or statement for a matter of that kind." Fed. R. Evid. 803(10)(A).

Unlike Rule 803(6), which governs the admissibility of business records, Rule 803(10) does not specify "the testimony of the custodian or another qualified witness." Fed.R.Evid. 803(6)(D). Rather, Rule 803(10) simply requires "testimony" that a diligent search did not turn up a public record. *See United States v. McDonald*, 905 F.2d 871, 875 (5th Cir. 1990) (holding that "[t]he government need not have produced the custodian of the records" to establish the absence of a record under Rule 803(10)). We have held that, "[f]or purposes of establishing foundation, it [i]s sufficient that the agent testified that he was familiar with both the process of searching the records and the government's recordkeeping practices with regard to the database." *United States v. Diaz-Lopez*, 625 F.3d 1198, 1200 (9th Cir. 2010) (noting that an agent testified about his experience and personal use of the database and his knowledge of its maintenance).

Roberson testified that the Forest Service maintained a register of people who have special use permits; that he had knowledge of how the register was maintained; that he had access to the register as part of his duties; that as part of his duties he knew where people could obtain special use permits; that he used the register to keep track of people who have special use permits and of activities taking place on National Forest land; and that he reviewed those records as part of his duties. Roberson further testified that he had checked the Forest Service register to see whether Parker had a special use permit, and that he knew "of [his] own personal knowledge" that neither Parker nor his company had a special use permit.

The foundation established by Roberson was extensive. Not only did he detail substantial knowledge of the permit system and his regular use of the system, he described how the register was maintained and how he undertook his search. Roberson's testimony was properly admitted to prove that his "diligent search failed to disclose a public record" of the permit under Rule 803(10).

## IV.    SUFFICIENCY OF EVIDENCE AS TO COUNT FIVE

Finally, we consider whether there was sufficient evidence to support Parker's conviction on Count 5, which stemmed from the activities of December 2011 and formed the basis for one of the two counts relating to conducting unlawful work activity on lands encompassed by Part 261. "Evidence is sufficient to support a conviction unless, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Doe*, 136 F.3d 631, 636 (9th Cir. 1998). Section 261.10(c) prohibits, in relevant part and as charged in Count 5, (1) "conducting any kind of work activity or service"; (2) on lands encompassed by the regulation; (3) without a special use authorization. 36 C.F.R. § 261.10(c).

Taken in the light most favorable to the prosecution, the evidence easily satisfies the sufficiency standard. As to Element 1 ("work activity or service"), Roberson testified that he observed Parker on the Highway with fifteen customers and snowmobiles; identified a truck with a trailer belonging to Cascade Playtime Rentals, Parker's business; and watched Parker flee the scene when Roberson attempted to make contact with him. Parker's view that Roberson failed to provide a link between Parker and commercial activity is

belied by common sense. In light of the truck adorned with Parker's business name, the snowmobiles, people standing in the road ready for snowmobiling, and Parker's flight, the magistrate judge was entitled to credit the objective evidence and draw reasonable inferences from the circumstantial evidence. *See United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir. 1995).

Parker does not seriously contest the other elements, nor could he. For Element 2 (lands encompassed by the regulation), Roberson testified that he observed Parker at points of the Highway entirely surrounded by the National Forest and that he watched Roberson lead all but two of the snowmobilers into the forest. For Element 3 (special use authorization), Roberson testified that Parker did not have or display a special use authorization, and that a search of the database revealed that Parker had no authorization. Because a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Doe*, 136 F.3d at 636, sufficient evidence supported Parker's conviction on Count 5.

**AFFIRMED.**