SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. QUENTIN SMITH

 
 Docket:
 SJC-13670
 
 
 Dates:
 March 3, 2025 - July 11, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Firearms. License. Practice, Criminal, Confrontation of witnesses, Motion for a required finding. Constitutional Law, Confrontation of witnesses. Evidence, Relevancy and materiality. Public Records.
 
 

 Complaint received and sworn to in the Worcester Division of the District Court Department on September 23, 2021.
 The case was heard by Robert J. Pellegrini, J.
 The Supreme Judicial Court granted an application for direct appellate review.
 Edward Crane for the defendant.
 Jesse-Paul J. Crane, Assistant District Attorney, for the Commonwealth.
 Agapi Koulouris, Special Assistant Attorney General, for Department of Criminal Justice Information Services, amicus curiae, submitted a brief.
 DEWAR, J.  At the jury-waived trial of the defendant, Quentin Smith, on firearms charges, the Commonwealth sought to prove that the defendant lacked a license to carry a firearm through the testimony of an employee of the Department of Criminal Justice Information Services (DCJIS).  The DCJIS witness testified that he searched a DCJIS-maintained Statewide database of firearm licenses using the defendant's name and a birth date supplied by the district attorney's office, and that the search returned no results.  The judge did not admit the witness's testimony regarding the birth date as evidence of the defendant's actual birth date, because the witness lacked personal knowledge of the date, and the Commonwealth did not introduce other evidence establishing the defendant's birth date.  The judge denied the defendant's motion for a required finding of not guilty and convicted the defendant of possessing a firearm without a license to carry and possessing ammunition without a firearm identification card. 
 On appeal, the defendant challenges the Commonwealth's proof of nonlicensure on several grounds.  The defendant acknowledges the long-standing rule that evidence that a search of public records failed to disclose a record is admissible to prove that the record does not exist.  See Blair's Foodland Inc. v. Shuman's Foodland, Inc., 311 Mass. 172, 175-176 (1942).  But here, he argues, the Commonwealth failed to lay an adequate foundation for such testimony, because the Commonwealth did not establish that the DCJIS witness had sufficient knowledge about the database.  He further argues that the testimony violated his right to confront the witnesses against him under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, and that the Commonwealth may introduce evidence of such a search result only through a witness responsible for creating and maintaining the records in the database.  Finally, he argues that the Commonwealth did not prove lack of licensure beyond a reasonable doubt because, among other reasons, the Commonwealth failed to introduce evidence that the DCJIS witness used the defendant's true birth date in searching the database.  
 We hold that a witness who is offered to testify that a search of a database of public records failed to return a record must be familiar with the process of searching the database and with the government record-keeping practices with respect to the database.  Under this standard, there was no abuse of discretion by the judge here.  The judge also was correct that, because the records in DCJIS's Statewide firearm license database are not testimonial, admission of testimony regarding the result of a search of the database did not violate the defendant's right to confront the witnesses against him.  The Commonwealth's proof of lack of licensure was insufficient, however.  The DCJIS witness's testimony that his search of the database returned no record had negligible probative value where the Commonwealth did not introduce evidence that the birth date used to search the database was the defendant's actual birth date.  We therefore reverse the defendant's convictions.[1]
 Background.  1.  Facts.  The charges against the defendant arose from a traffic stop on September 22, 2021, during which police found a loaded firearm in his pocket.[2]  We begin by summarizing, in the light most favorable to the Commonwealth, the evidence at trial concerning the primary contested issue:  whether the defendant lacked a license to carry a firearm.[3]  
 The Commonwealth's witness on this issue was Phil Dowd, who, at the time of trial, had been a DCJIS employee for six months.  He previously worked for the State police for almost twenty-eight years and, throughout his various roles over those years, used the criminal justice information system (CJIS or system) every day.  His use of the system ranged from entering queries during traffic enforcement duty to gleaning information from CJIS to make decisions about how to allocate investigatory resources.
 Dowd described how firearm licenses are created and electronically stored.  Licenses are issued upon application to a licensing authority, either the applicant's local police department or, for State police troopers and out-of-State applicants, the colonel of the State police.  The licensing authority enters information from the application into the Massachusetts instant record check system (MIRCS or firearm license database), a database maintained by DCJIS.  Once an application is processed and approved, it is sent electronically through MIRCS to the firearms records bureau, which is the Statewide repository for all records of licenses to carry and firearm identification cards.  The bureau then conducts a second background check on the applicant to ensure that the person is not legally barred from obtaining a license to carry or firearm identification card.  Once an application is approved, the bureau sends a hard copy of the license to the licensing authority.  The licensing authority then provides the licensee with the hard copy of the license and activates the license in MIRCS.  
 A DCJIS employee or police officer can search the MIRCS firearm license records in CJIS using a person's name and date of birth.  If the person has a license to carry, the system will display the status of the license as "active," "expired," "suspended," or "revoked."  The system uses a "Soundex" search method for names that allows some room for error in misspelling a person's name.[4]  If the birth date is entered incorrectly in a query, however, the search will not return a record for a license holder, even if the person's name is spelled correctly and a record exists for the person under the correct birth date.  
 A few days before the defendant's trial, the district attorney's office gave Dowd information that, he was told, was the defendant's name and date of birth.  Dowd used that information to search the firearm license database.  The result of the search was "no records found."
 2.  Procedural history.  The defendant was charged with 
carrying a firearm without a license, carrying a loaded firearm without a license, and possession of ammunition without a firearm identification card.[5]  
 In advance of the defendant's trial on November 29, 2023, the Commonwealth moved for leave to admit Dowd's testimony regarding his search of the firearm license database to prove that the defendant lacked a firearm identification card and a license to carry.  Following a hearing on the motion, the judge allowed the motion over the defendant's opposition.  At trial, although the judge permitted Dowd to testify regarding the database search, the judge sustained the defendant's objection that Dowd lacked personal knowledge of the defendant's birth date and held that he would not consider Dowd's testimony as substantive evidence of the birth date.  The Commonwealth did not introduce alternate substantive evidence of the birth date.[6]    
 At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty, arguing that the evidence was not sufficient to prove that he lacked a license to carry.  The trial judge denied the motion, found the defendant guilty of carrying a firearm without a license and unlawful possession of ammunition, and acquitted the defendant of carrying a loaded firearm without a license.  He sentenced the defendant to eighteen months in a house of correction on the firearm conviction and a concurrent sentence of six months on the ammunition conviction.  The defendant appealed, and we granted his application for direct appellate review.
 Discussion.  1.  Absence of public record.  The defendant argues that the judge erred in admitting in evidence Dowd's testimony that a search of the firearm license database produced no record of a license to carry in the defendant's name, because the Commonwealth did not lay an adequate foundation for the testimony showing that Dowd had sufficient familiarity with the database.  We review a judge's evidentiary decisions for abuse of discretion, "'a clear error of judgment in weighing' the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).
 Under our common law, testimony that a search of public records did not turn up a record is admissible to prove the nonexistence of such a record.  See, e.g., Commonwealth v. Meserve, 154 Mass. 64, 71 (1891) ("The only practicable way in practice to prove that no deed appears of record is to show that an examination of the records discloses none").  This rule is founded upon two different justifications.  See 4 J.H. Wigmore, Evidence § 1244, at 579-580 (Chadbourn rev. ed. 1972).  First, such testimony does not seek to establish the contents of an out-of-court document but instead to establish the absence of any document.  See 5 C.S. Fishman & A. Toomey McKenna, Jones on Evidence § 34:54 (7th ed. 2023) ("As a general rule, silence is not classified as hearsay").  Second, as a practical matter, such testimony obviates "the inconvenience of producing voluminous documents" from which the fact finder could perform its own such assessment, J.H. Wigmore, supra, and solves the problem when "[t]he court and jury cannot look through the records for themselves," Meserve, supra.  
 Our application of this common-law rule has not been limited to testimony by custodians of public records.  For example, in Blair's Foodland Inc., 311 Mass. at 175-176, an attorney testified that his search of the Boston city clerk's records from 1931 onward unearthed no record of a certificate for a business that allegedly was operating under a particular name starting around 1934 or 1935.  We held that this testimony was "competent" evidence that, contrary to the business owner's testimony, the owner had not filed such a certificate with the city; the attorney's testimony regarding his search "was a practical way of showing the absence of a certificate."  Id. at 176, citing Wigmore, Evidence § 1244 (3d ed. 1940).  See also, e.g., Dumangue v. Daniels, 154 Mass. 483, 484-486 (1891) (testimony of party's attorney that search of property records revealed no responsive record).  As Chief Justice Holmes commented, "it would be going pretty far to hold that a person having personal knowledge of the state of a record from inspection could not testify that it did not contain a certain warrant, without producing the record."  Commonwealth v. Best, 180 Mass. 492, 495 (1902) (testimony of deputy sheriff of Maine county that, contrary to defendant's claim, no arrest warrant had been issued for victim in that county).
 Similar such evidence now is admissible without need for a witness under our rules of criminal and civil procedure governing authentication of public records.  See Mass. R. Crim. P. 40 (b), 378 Mass. 917 (1979); Mass. R. Civ. P. 44 (b), 365 Mass. 807 (1974).  These rules permit admission of a certification that no specified public record exists:  "A written statement that after diligent search no record or entry of a specified tenor is found to exist in" certain official records "is admissible as evidence that the records contain no such record or entry."  Mass. R. Crim. P. 40 (b).  Mass. R. Civ. P. 44 (b).[7]
 The Massachusetts Guide to Evidence, § 803(10), addresses both testimony and certified statements attesting to the absence of a public record.  It advises that 
"[t]estimony -- or certification under [§] 902 -- that a diligent search failed to disclose a public record or statement is admissible in evidence if the testimony or certification is offered to prove that (A) the record or statement does not exist, or (B) a matter did not occur or exist, if a public office regularly kept a record or statement for a matter of that kind." 
Mass. G. Evid. § 803(10) (2025).[8]
 Here, Dowd's testimony that his search of the Statewide firearm license database turned up no results was a "practicable way" of proving that no one with that particular name and birth date had a firearm license.  Meserve, 154 Mass. at 71.  In the defendant's view, however, the judge nevertheless abused his discretion in admitting Dowd's testimony, because the Commonwealth did not lay a sufficient foundation.  In particular, he argues, citing Commonwealth v. Guardado, 491 Mass. 666, 698 (Guardado I) (Lowy, J., concurring), S.C., 493 Mass. 1 (2023) (Guardado II), cert. denied, 144 S. Ct. 2683 (2024), Dowd lacked "sufficient familiarity" with how records in the database are "created, maintained, and accessed."  A search of public records "is simply not reliable," he urges, "unless the person who conducted the search has knowledge of how the public records within the database are created and maintained as well as knowledge of how the records are accessed via the search function"; "[c]omprehensive knowledge of how the database works is necessary to ensure that only reliable hearsay is admitted via the 'absence of a public record' exception."  And, the defendant argues, although Dowd testified how licensing records are created, he did not explain how licensing records are maintained thereafter.
 We have not previously had occasion to consider the foundation necessary to admit a witness's testimony that a search of public records turned up no record.[9]  For guidance, however, we may look to the Federal courts' interpretation of the corresponding Federal rule.  See Wynn & Wynn, P.C. v. Massachusetts Comm'n Against Discrimination, 431 Mass. 655, 677 n.29 (2000).  Rule 803(10) of the Federal Rules of Evidence provides in relevant part that testimony "that a diligent search failed to disclose a public record" is admissible to prove that "the record . . . does not exist."  See, e.g., United States v. Giambro, 544 F.3d 26, 31-32 (1st Cir. 2008) (searches for defendant's name and firearm serial number in Federal firearms databases did not reveal records showing defendant registered firearm).  Courts have noted that, unlike the rule regarding business records, see Fed. R. Evid. 803(6)(D), this rule by its own terms does not require that the testimony come from a custodian or other qualified witness -- although it does impose the requirement of a "diligent search."  See United States v. Parker, 761 F.3d 986, 992 (9th Cir. 2014), citing United States v. McDonald, 905 F.2d 871, 875 (5th Cir.), cert. denied, 498 U.S. 1002 (1990).[10]  
 Faced with similar challenges regarding the extent of a witness's knowledge of a database of public records, the United States Court of Appeals for the Ninth Circuit has held that, "[f]or purposes of establishing foundation," it is "sufficient" if a witness is "familiar with both the process of searching the records and the government's recordkeeping practices with regard to the database."  Parker, 761 F.3d at 992, quoting United States v. Diaz-Lopez, 625 F.3d 1198, 1200 (9th Cir. 2010), cert. denied, 563 U.S. 1015 (2011).  Under this standard, "[t]he government need not produce a computer programmer or expert witness to testify as to the accuracy of the database"; rather, the extent of a witness's knowledge "regarding particular database policies and procedures [is] a fair subject for a reasonable cross-examination, but goes to the weight accorded to" testimony "rather than to its admissibility."  Diaz-Lopez, supra.  Thus, in Diaz-Lopez, supra, a border patrol agent's testimony "about his experience with and personal use of" a database of immigration records and "his knowledge of its maintenance" laid a sufficient foundation for his testimony as to the absence of a record therein.  See also Parker, supra (officer's testimony regarding absence of permit in database rested on "extensive" foundation where he testified regarding "substantial knowledge of the permit system," access to and regular use of database as part of his duties, "knowledge of how [it] was maintained," and "how he undertook his search").  
 We adopt this standard, which is in accord with our common-law tradition permitting, for example, a licensed attorney to testify that a search of a city's business registration or property records returned no record.  See Blair's Foodland Inc., 311 Mass. at 175-176; Dumangue, 154 Mass. at 484-486.  We thus disagree with the defendant's argument that a witness must have "comprehensive" knowledge of a public records database to be competent to testify that a search of the database returned no result.  Rather, it suffices that the witness be familiar with the process of searching the database and with the public record-keeping practices with respect to the database.  And, of course, the defendant is free to challenge the extent of the witness's knowledge through cross-examination.
 Under this standard, the Commonwealth established a sufficient foundation that Dowd was competent to testify to the results of his search of the firearm license database.  Dowd detailed his extensive experience using the database, having performed "[t]housands" of such queries over his decades-long career in law enforcement; explained how information enters the Statewide database from licensing authorities during the license application process and that DCJIS then maintains the database; and described how a query regarding a particular person is run and the various possible search results.  Dowd admitted that he was "not familiar with the actual electronic code that is involved in uploading or downloading data from [the] database," but he was familiar with, for example, "checks and balances" built into the process of issuing licenses that guard against the risk that a licensee's name is misspelled in the database.  And, although Dowd did not testify regarding how information in the database was maintained with respect to revoked and expired licenses,[11] the judge could infer from Dowd's testimony that Dowd also was familiar with those aspects of the database, based on his testimony that searches of the database may return results of "revoked" and "expired," as well as his extensive experience using the database.  Dowd's testimony thus amply established that he was familiar with the process of searching the database and adequately established that he understood the relevant government record-keeping practices.  There was therefore no abuse of discretion in admitting Dowd's testimony for lack of knowledge on Dowd's part. 
 2.  Confrontation clause.  We next address the argument that Dowd's testimony violated the defendant's Federal and State constitutional right to confront the witnesses against him.  See Commonwealth v. Sullivan, 478 Mass. 369, 377 (2017), citing Melendez-Diaz v. Massachusetts, 557 U.S. 305, 329 (2009), and Commonwealth v. Nardi, 452 Mass. 379, 388 n.10 (2008).  "We accept the judge's findings of fact unless clearly erroneous but independently apply constitutional principles to the facts found."  Commonwealth v. Rand, 487 Mass. 811, 814 (2021), quoting Commonwealth v. Beatrice, 460 Mass. 255, 259 (2011).
 The confrontation right "applies to 'witnesses' against the accused, 'in other words, those who "bear testimony."'"  Commonwealth v. Parenteau, 460 Mass. 1, 6 (2011), quoting Crawford v. Washington, 541 U.S. 36, 51 (2004).  "[T]he touchstone of the confrontation clause analysis is whether the primary purpose of a declarant's out-of-court statement is testimonial or nontestimonial -- that is, whether the statement is intended to 'prove past events potentially relevant to later criminal prosecution.'"  Commonwealth v. Middlemiss, 465 Mass. 627, 634 (2013), quoting Michigan v. Bryant, 562 U.S. 344, 366 (2011).  "The test is an objective one; we examine 'the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the surrounding circumstances.'"  Commonwealth v. Wardsworth, 482 Mass. 454, 464 (2019), quoting Commonwealth v. Imbert, 479 Mass. 575, 580 (2018).
 An agency's "public records are generally admissible absent confrontation . . . because -- having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial -- they are not testimonial."  Commonwealth v. Zeininger, 459 Mass. 775, 786, cert. denied, 565 U.S. 967 (2011), quoting Melendez-Diaz, 557 U.S. at 324.  We have held, for example, that certification records reflecting that a breathalyzer machine met certain regulatory requirements were not testimonial in a prosecution for operating a vehicle while under the influence of alcohol, because the records were "maintained in the routine administration of the affairs of an administrative agency tasked with quality control, not with supplying evidence 'taken for use at trial.'"  Zeininger, supra at 780-781, 788, quoting Bryant, 562 U.S. at 358.  See also, e.g., Commonwealth v. Fulgiam, 477 Mass. 20, 41 n.24, 43, cert. denied, 583 U.S. 923 (2017) (fingerprint records "maintained in the State police's identification unit" and "created prior to the commencement of the case" admissible without confrontation where such records were "typically produced, entered, and maintained for administrative purposes in good faith, in the ordinary course of business of the State police").  A public record is not admissible without confrontation, however, if its primary purpose was to "creat[e] an out-of-court substitute for trial testimony," Imbert, 479 Mass. at 580, quoting Bryant, supra, as in the case of the certificates memorializing drug analysis results in Melendez-Diaz, supra at 311.
 The defendant argues that the result of Dowd's database search was testimonial because its probative value rested on the truth of statements by licensing authorities stored within DCJIS's firearm license database regarding who had been issued licenses.  He contends, citing Sullivan, 478 Mass. at 377-378, that he therefore was entitled to confront "the person . . . responsible for creating and maintaining the records in the database."  The judge correctly rejected this argument at trial.
 There was no violation of the defendant's right to confront the witnesses against him because the contents of the firearm license database were not testimonial.  As Dowd testified, the database contains license records created by State and local licensing authorities and maintained by DCJIS to carry out Massachusetts's statutorily prescribed firearm licensing scheme.[12]  The records thus were "created for the administration of [the Commonwealth's] affairs and not for the purpose of establishing or proving some fact at trial."  Zeininger, 459 Mass. at 786, quoting Melendez-Diaz, 557 U.S. at 324.  See State v. Carrion, 249 N.J. 253, 271-272 (2021) (firearm license database constitutes "raw data, collected for a neutral administrative purpose, [and] is not testimonial").  
 The records are therefore unlike those in Sullivan, 478 Mass. at 374, where a State police trooper testified that a laboratory analysis of deoxyribonucleic acid (DNA) found on objects at the crime scene matched the defendant's DNA profile in a national DNA database.  Because "the 'primary purpose'" of the laboratory report was "to accuse the defendant and create evidence for use at trial," admission of this hearsay through the trooper's testimony violated the defendant's right to confront the witnesses against him (citation omitted).  Id. at 378.  Here, by contrast, because the contents of DCJIS's database were not created with the "primary purpose" of creating evidence for use at trial, Middlemiss, 465 Mass. at 634, quoting Bryant, 562 U.S. at 366, Dowd's testimony regarding the result of his search of the database did not violate the defendant's right to confront the witnesses against him.[13]
 3.  Sufficiency of evidence.  Last, we turn to the defendant's argument that the evidence at trial was insufficient to prove the element of lack of licensure for each of the offenses of which he was convicted.  See G. L. c. 269, § 10 (a) (carrying firearm without license); G. L. c. 269, § 10 (h) (1) (possession of ammunition without firearm identification card); Guardado I, 491 Mass. at 668 (proof of nonlicensure required).  
 When reviewing a sufficiency claim, we consider whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted).  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "[C]ircumstantial evidence is sufficient to establish guilt beyond a reasonable doubt, and inferences drawn from such evidence need only be reasonable and possible; [they] need not be necessary or inescapable" (quotations and citations omitted).  Commonwealth v. Gonzalez, 475 Mass. 396, 407 (2016).  "Nonetheless, 'it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt.'"  Id., quoting Latimore, supra at 677–678.  And "[n]o[] . . . conviction [may] rest upon the piling of inference upon inference or conjecture and speculation."  Gonzalez, supra, quoting Commonwealth v. Swafford, 441 Mass. 329, 343 (2004).
 The defendant argues that the evidence at trial was insufficient to prove lack of licensure because, although Dowd testified to searching the name "Quentin Smith" and the birth date of June 23, 2002, the Commonwealth did not introduce substantive evidence that the defendant's birth date was June 23, 2002.  The judge ruled that he would consider Dowd's testimony only for the truth of the query Dowd entered and not for the truth of the defendant's birth date, and no other witness testified regarding the birth date.  Accordingly, in announcing the verdicts, the judge acknowledged that the Commonwealth "never got the date of birth in."  
 The Commonwealth responds that the record contains "uncontradicted testimony that [the] defendant did not possess a firearm license" because Dowd testified "that he conducted a search of all the records of [licenses] issued by licensing authorities in the Commonwealth based on the defendant's biographical details as provided to him, and found no record of such a person receiving" a license.  The Commonwealth further urges that, based on Dowd's testimony that the district attorney's office supplied him with the name and birth date, a rational fact finder could infer that "Dowd had a reliable basis for using that birthdate because the District Attorney's Office obtained the defendant's name and birthdate from the police, who obtained it from the defendant during the booking process."  
 Even in the light most favorable to the Commonwealth, Dowd's testimony did not alone amount to sufficient evidence that the defendant lacked a firearm license.  The judge properly declined to consider Dowd's testimony for the truth of the birth date due to Dowd's lack of personal knowledge; Dowd's restatement of the date given to him by the district attorney's office was hearsay.[14]  And, while the Commonwealth is correct that proof of identity "may be established in a number of ways and it is not necessary that any one witness should distinctly swear that the defendant was the man" (quotation, citation, and alteration omitted), Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010), no other witness supplied the defendant's birth date.
 This gap in the evidence is fatal, because the probative value of Dowd's testimony to prove that the defendant lacked a license depended on the birth date used to search the database.  Dowd testified that, even if a person does have a firearm license, a search for that person's name will return no result if the person's birth date is entered incorrectly.  Consequently, in the absence of any substantive evidence of the defendant's birth date, Dowd's testimony -- that the database returned no result when searched for the defendant's name and a birth date -- had at most a vanishingly "slight" tendency to prove that the defendant himself lacked a license and cannot amount to proof beyond a reasonable doubt.  Latimore, 378 Mass. at 677–678.  See Commonwealth v. Encarnacion, 105 Mass. App. Ct. 46, 52 n.8 (2024) (witness testifying to lack of firearm licensure based on database search "would of course need to show that the search was conducted using the defendant's correct name and date of birth").  The cases cited by the Commonwealth for the proposition that Dowd's testimony alone sufficed to prove lack of licensure are distinguishable, because in those cases there was no dispute that the person who performed the search for a license used the defendant's name and date of birth.  See State v. Davis, 324 Conn. 782, 789 & n.3 (2017) (noting evidence from which jury could infer use of "correct" date of birth); Bussie v. United States, 81 A.2d 247, 248 (D.C. 1951) ("no contention" by defendant that person who performed search lacked knowledge "to make a complete search of the records and to render an accurate report of what they did or did not contain").  
 We thus conclude that the evidence was not sufficient to prove beyond a reasonable doubt that the defendant lacked a license to carry or a firearm identification card.[15]  The defendant's convictions of unlawful possession of a firearm and ammunition therefore cannot stand, see Guardado I, 491 Mass. at 668, and judgments must enter in the defendant's favor, see Guardado II, 493 Mass. at 6.[16]
 Conclusion.  The DCJIS witness's testimony regarding his search of the Statewide firearm license database was grounded on a sufficient foundation of knowledge about the database, because the witness was familiar with the process of searching the database and the public record-keeping practices with respect to the database.  The witness's testimony did not violate the defendant's right to confront the witnesses against him, because the records in the database are not testimonial.  The evidence was not sufficient to prove that the defendant lacked a license to carry or firearm identification card, however, because the Commonwealth introduced no evidence that the birth date used to search the database was the defendant's birth date.  We therefore reverse the judgments as to unlawful possession of a firearm and ammunition, set aside the findings, and remand for entry of judgments in favor of the defendant.
So ordered.
footnotes

 [1] We acknowledge the amicus brief of the Department of Criminal Justice Information Services submitted in support of neither party.
 [2] Before trial, the defendant moved to suppress the evidence recovered during the traffic stop.  Deciding this case as we do, we need not reach the defendant's argument on appeal that the motion to suppress should have been allowed. 
 [3] This court's decision in Commonwealth v. Guardado, 491 Mass. 666, 668, S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024), holding that due process requires the Commonwealth to prove nonlicensure beyond a reasonable doubt regardless of whether a defendant comes forward with evidence of licensure, predated this defendant's trial by approximately seven months.
 [4] Certain details in Dowd's testimony regarding precisely how the search method works are contradicted by the amicus brief from DCJIS.  Deciding this case as we do, however, these details are immaterial.  See note 16, infra.
 [5] An additional charge of possession of a class B substance was dismissed on the Commonwealth's motion on the day of trial.
 [6] The police officer who booked the defendant upon his arrest was unavailable to testify regarding any birth date the defendant supplied during the booking process, and the judge refused to grant the Commonwealth a continuance of the trial in order to try to ascertain another witness -- not included in the Commonwealth's witness list furnished to the defendant before trial -- with personal knowledge of the date.
 [7] Such a written statement must come from a custodial officer.  See Mass. R. Crim. P. 40 (a) (1), (b); Mass. R. Civ. P. 44 (a) (1), (b).  These rules' requirement of a custodian -- to facilitate admission of such evidence without need for a witness -- does not necessarily entail a requirement that a live witness testifying to the absence of a public record following a diligent search be a record custodian.  See Mass. R. Crim. P. 40 (c) ("This rule does not prevent the proof, by any other method authorized by law, of . . . the lack of . . . an official record . . ."); Mass. R. Civ. P. 44 (c) (same).  Cf. 4 J.H. Wigmore, Evidence § 1273, at 674-675 (Chadbourn rev. ed. 1972) (rule permitting admission of certified copies should not be understood as "provid[ing] an exclusive mode" to exclusion of sworn testimony authenticating document).
 [8] A note appended to § 803(10) states that the text of the provision is taken from Proposed Mass. R. Evid. 803(10) (1980).  See Mass. G. Evid. § 803(10) note.  See also Hedberg v. Wakamatsu, 482 Mass. 613, 614 n.2 (2019) (discussing origin and status of Proposed Massachusetts Rules of Evidence).  No party to this case has urged us to adopt Proposed Mass. R. Evid. 803(10) into our common law wholesale, and, especially in the absence of an invitation to do so, we decline to restrict the development of the law in this area.  See Hedberg, supra.
 [9] Although the defendant cites in support of his argument our decision in Commonwealth v. Trotto, 487 Mass. 708, 731-732 (2021), Trotto did not address the foundation necessary for admission of testimony that a search of public records returned no record.  That issue was not briefed to this court in Trotto; for example, the Commonwealth did not claim that the various databases searched there -- of "nationwide records from cellular telephone subscriptions, utilities, and credit reports," "people who had formed corporations in Massachusetts," and "nationwide insurance claims," id. at 731 -- were public records.  Moreover, we noted that it was not even clear that the witness had personally performed the searches of the databases, and the Commonwealth apparently had conceded at trial that the testimony was hearsay.  See id. at 731-732.  Trotto thus does not shed light on the foundation required for a witness to testify that a search of public records returned no record.  
 [10] The defendant here makes no argument that Dowd's testimony was inadmissible on the ground that the Commonwealth failed to show he performed a diligent search. 
 [11] The defendant argues that such knowledge was relevant here, where Dowd's search of the database occurred more than two years after the offense, allowing for the possibility that the defendant had had a license at the relevant time that had expired or been revoked in the interim before Dowd's search.
 [12] See G. L. c. 140, § 129B (13) (upon issuance of firearm identification card, "licensing authority shall forward a copy of such approved application and card to the executive director of the criminal history systems board [now known as DCJIS], who shall inform the licensing authority forthwith of the existence of any disqualifying condition discovered or occurring subsequent to the issuance of a firearm identification card under this section"); G. L. c. 140, § 131 (n) (same, for licenses to carry); 803 Code Mass. Regs. §§ 7.00 (2021) (access to DCJIS-maintained records); 803 Code Mass. Regs. §§ 10.00 (2017) (access to DCJIS's firearm license database by gun dealers for gun transactions).  See also Doe v. Board of Registration in Med., 485 Mass. 554, 558 (2020), citing St. 2010, c. 256, §§ 1, 135 (noting agency formerly known as "criminal history systems board" is now DCJIS).
 [13] Because the database's contents were in any case not testimonial, we need not address the defendant's argument that the search result of "no records found" was an out-of-court "statement."  Cf. Commonwealth v. Brea, 488 Mass. 150, 159-160 (2021) (discussing distinction between "computer-generated" records, which are not hearsay because they "contain only the results of computer programs," and "computer-stored" records, which "can in certain circumstances constitute hearsay" because they "contain statements of human beings"). 
 [14] The Commonwealth's suggestion that the defendant himself may have supplied the date during booking, thus exempting it from the rule against hearsay, is speculation without support in the evidence at trial.  See Commonwealth v. Hurley, 455 Mass. 53, 63-64 (2009) (to introduce hearsay, Commonwealth bears burden to establish common-law exception applies).  And, although Dowd testified that he did unspecified "computer checks" to verify the information supplied by the district attorney's office, the judge also properly declined to consider this testimony as substantive evidence of the defendant's birth date given Dowd's lack of personal knowledge of the date and the unexplained nature of the "computer checks."  See id.
 [15] The only evidence aside from Dowd's testimony cited by the Commonwealth in support of the sufficiency of the evidence of lack of licensure -- that the defendant's nervous conduct during the motor vehicle stop "could be reasonably interpreted to show that he was in possession of a firearm and was concerned about [it] being discovered because he did not possess it lawfully" -- cannot alone prove the element of lack of licensure.  See Commonwealth v. Woods, 466 Mass. 707, 717, cert. denied, 573 U.S. 937 (2014), S.C., 480 Mass. 231, cert. denied, 586 U.S. 1054 (2018) ("consciousness of guilt alone is insufficient to support a guilty verdict"). 
 [16] So concluding, we need not reach the additional sufficiency arguments raised by the defendant for the first time on appeal:  (1) that Dowd's testimony regarding his search of the database in November 2023 was insufficient to prove beyond a reasonable doubt that the defendant was not licensed in September 2021, and (2) that the record did not reflect whether Dowd's query correctly spelled the defendant's first name or that, even if there was a spelling error, the database's search function would return his license due to the "Soundex" search method used, see note 4, supra, and accompanying text.